## Richmond

LONNIE McMILLON v. COMMONWEALTH OF VIRGINIA.

November 29, 1971.

Record No. 7733.

Present, All the Justices.

*Russell M. Carneal (Carneal, Smith & Athey,* on brief), for plaintiff in error.

*Andrew P. Miller, Attorney General (T. J. Markow, Assistant Attorney General,* on brief), for defendant in error.

Case submitted on brief by defendant in error.

COCHRAN, J., delivered the opinion of the court.

Appellant, Lonnie McMillon, was tried by the court and found guilty of possession of narcotic drugs in violation of the Uniform Narcotic Drug Act. He was sentenced to serve two years in the

State Penitentiary but the sentence was suspended and he was placed on probation for three years. We granted McMillon a writ of error to the judgment order entered July 27, 1970 to consider the question whether the narcotic drugs were inadmissible in evidence as the product of an illegal search and seizure.

On February 25, 1970, Sergeant Altizer of the Williamsburg Police Department obtained a search warrant to search for narcotics "a room and package" at The Franklin House, 427 Franklin Street, further described as "Room 100 occupied by Lonnie & Frenchie McMillian. The package addressed to Frenchie McMillian and post-marked Baltimore, Md."

Armed with the search warrant, Altizer proceeded to The Franklin House, an apartment complex, at approximately 12:30 p.m. He went to the office of Mr. Gardner, the manager. Shortly thereafter McMillon, having been called, came to the office to pick up the package addressed to his wife, Frenchie.

From this point on the facts are not clear, in part because the trial court, with commendable concern for the protection of McMillon's rights, continued the case, after the introduction of considerable evidence, in order that additional counsel could be employed to represent him. When the trial was resumed about six weeks later Sergeant Altizer's testimony was in many respects inconsistent with his testimony at the first hearing.

From a careful reading of the transcripts of both hearings, the sequence of events appears to be as follows: When McMillon entered the manager's office, Altizer identified himself as a police officer "and served a copy of the search warrant on him, explaining the search that was about to be made." The package was handed to McMillon. In answer to questions propounded by the trial court, Altizer testified at each hearing that he thereupon arrested McMillon. The second time that he so testified was after he had testified, in answer to questions by the Commonwealth's Attorney, that he did not make the arrest until McMillon had said that the package was his and contained dolophine (methadone), a narcotic drug. Then either McMillon or Sergeant Altizer opened the package and methadone tablets were revealed.

Sergeant Altizer left the manager's office with McMillon and went to search McMillon's room. As they entered the room, McMillon walked to a dressing table, opened a drawer and put into his pocket something which Altizer could not identify. Altizer asked McMillon

to remove the object and put it on the table, which was done. It contained narcotics paraphernalia or "works", including hypodermic needles, medicine dropper and bottle cap, and three capsules of white powder which responded positively to the qualitative test for heroin.

The trial court ruled that the search warrant was invalid since the supporting affidavit did not set forth sufficient facts to establish probable cause for its issuance. The court also recognized that there could be no valid search of McMillon's room 150 feet away from the place of his arrest as incident to the arrest. *See Vale v. Louisiana,* 399 U.S. 30, 33-34 (1970). However, the court held that Altizer had probable cause to arrest McMillon, and that the paraphernalia and capsules containing heroin were admissible in evidence as the product not of a search of his room, but rather of a search of his person incident to his lawful arrest. The court did not rule on the admissibility of the methadone tablets.

The Attorney General contends that McMillon committed a felony in the presence of Sergeant Altizer by freely admitting ownership of narcotic drugs in the package addressed to his wife but delivered to him. Of course, an officer has the right to arrest without a warrant for a felony, or even a misdemeanor, committed in his presence. *Bryson v. Commonwealth,* 211 Va. 85, 175 S.E.2d 248 (1970); *Fierst v. Commonwealth,* 210 Va. 757, 173 S.E.2d 807 (1970). However, the admissions by McMillon and the opening of the package occurred after service upon him of the invalid search warrant.

> "The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.
>
> \* \* \* \* \*
>
> "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." *Bumper v. North Carolina,* 391 U.S. 543, 548-49 (1968).

[■] Even if we concede, contrary to his last testimony on the subject, that Altizer only arrested McMillon after seeing the methadone tablets, the arrest was not thereby made lawful. The methadone tablets, being the product of an illegal search, could not be used to provide probable cause for his arrest. *Henry v. United States,* 361

U.S. 98 (1959); *United States* v. *Di Re*, 332 U.S. 581 (1948); *Bryson* v. *Commonwealth, supra*. Therefore, it becomes necessary to determine whether, aside from his discovery of the methadone tablets, Sergeant Altizer had probable cause to arrest McMillon.

In order to establish probable cause for the arrest the Commonwealth relied on an elaboration of the facts set forth in the affidavit for the invalid search warrant. From the record it appears that the following facts were known to Altizer when he arrested Mc-Millon:

(1) In December, 1969, McMillon had been treated at a local hospital for an infection of the vein in his left arm. Altizer had received this information from another police officer, who had received it from a Dr. Fletcher.

(2) Altizer had observed people visiting McMillon's room frequently between midnight and 2:30 a.m. during January and early February, 1970.

(3) Gardner had reported to Altizer that known drug addicts frequently visited McMillon's room.

(4) Gardner had seen hypodermic needles and syringes in Mc-Millon's room at some unspecified time.

(5) The package addressed to McMillon's wife had been delivered to McMillon.

The trial court felt that, while none of these facts alone would be sufficient to establish probable cause, they were sufficient when taken together. We do not agree.

The fact that McMillon was treated for an arm infection some 2-½ months prior to his arrest may be suspicious. But there is nothing in the record, other than the invalid search warrant, which indicates the cause of the infection. If the statement in the search warrant that the infection was caused by an injection is accepted, there is still no proof that the injection was illegal.

None of the visitors whom Altizer had observed frequenting Mc-Millon's apartment were then known to anyone as narcotics users.

Gardner's information that known drug addicts frequented McMillon's room was inadequate. Gardner did not know that McMillon was being visited by drug addicts. He only knew that an individual who had visited the apartment and had been seen in the recreation room of the apartment building with McMillon's wife had reportedly been refused employment because of needle marks on his arm.

Furthermore, the fact that a person consorts with drug addicts does not, of itself, create probable cause to arrest that person as a narcotics user, even when the connection with known addicts is more firmly established than it was in this case. *Sibron* v. *New York*, 392 U.S. 40 (1968).

As to Gardner's report of hypodermic needles and syringes in McMillon's room, we agree with McMillon's contention that there are many legitimate uses of hypodermics and that there was no proof that McMillon's use was illegal.

Altizer admitted that he did not know what was in the package addressed to McMillon's wife until the contents had been removed. This occurred after service upon McMillon of the invalid search warrant.

■ We conclude that McMillon's arrest was made without probable cause. Since the arrest was invalid, any search of McMillon incident thereto was invalid and all evidence seized in the search should have been suppressed. *Upton* v. *Commonwealth*, 211 Va. 445, 177 S.E.2d 528 (1970); *Bryson* v. *Commonwealth, supra.*

The Attorney General contends that no search was made in McMillon's room since McMillon voluntarily removed the narcotics and equipment from his pocket. This contention is without merit.

To say that McMillon voluntarily delivered the contents of his pocket to Altizer is to take an unrealistic position. McMillon had been illegally arrested prior to the time he was taken to the apartment. The burden is upon the Commonwealth to show that the evidence in controversy was produced voluntarily and not because of the arrest. "[S]ince arrest carries its own aura of coercion, the burden on the government to show voluntary consent is particularly heavy." *Gorman* v. *United States*, 380 F.2d 158, 163 (1st Cir. 1967). Here, the Commonwealth has not met this heavy burden. *See, e.g., United States* v. *Reincke*, 229 F. Supp. 132 (D.C. Conn. 1964); Annot., 9 A.L.R.3d 858 (1966).

We conclude that the methadone tablets, the narcotics paraphernalia and the heroin capsules were inadmissible in evidence as the product of an illegal search and seizure. The motion to suppress this evidence should have been granted. McMillon's conviction is accordingly set aside and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*