STATE OF WEST VIRGINIA

*v.*

MICHAEL PATRICK MOORE

(No. 14009)

Decided November 25, 1980.

*Thomas E. Loehr, James W. Pyles,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey, James F. Wallington,* Assistant Attorneys General, for defendant in error.

MILLER, JUSTICE:

This appeal presents the question of whether a State Police officer had sufficient probable cause to seize and open a paper bag protruding from beneath the seat of an automobile he had stopped for violating our motor vehicle laws. The resolution of this issue will also determine the validity of the subsequent arrest and the admissibility of inculpatory statements made immediately following the arrest.

On May 21, 1975, at approximately 9:10 in the evening, a State Police officer observed a 1965 Rambler automobile traveling past him on State Route 2 in Wetzel County. The tail lights on the vehicle were not operating. The trooper proceeded to follow the vehicle in his cruiser and, with his headlights on, he observed two people in the Rambler. When he was approximately fifteen to twenty feet behind the automobile, he activated his blue emergency flashing light. At this point, the trooper observed the passenger lean forward. The driver of the car proceeded to pull over to the berm of the highway and stop.

The trooper stopped his vehicle behind the Rambler and got out carrying a flashlight. He walked to the driv-

er's side of the Rambler and shined his flashlight into the interior, noting two occupants and a brown paper bag partially protruding from under the front seat on the passenger's side.

He asked the driver for his operator's license which was produced and carried the surname "Moore." This triggered a recollection in the trooper's mind that approximately two and one-half years earlier a person by the name of "Moore" had been the subject of a drug-related arrest in Wetzel County.

The trooper then walked around to the passenger side of the vehicle and asked the passenger to step outside, which he did. The trooper reached inside the vehicle and seized the paper bag and opened it and observed a plastic bag which appeared to contain a quantity of marijuana. The passenger was arrested by the trooper on a charge of possession of marijuana and was taken back to the police cruiser where he was given his *Miranda* rights. The trooper interrogated the defendant who disclosed that the bag contained marijuana which he had obtained from an individual in Morgantown.

After the development of these facts in two *in camera* suppression hearings, the trial court ruled that the trooper had probable cause to seize the brown paper bag and open it. The trooper was also permitted to testify concerning the defendant's inculpatory statements.

The State, in an excellent brief, acknowledges that warrantless searches are *per se* unreasonable under the Fourth Amendment of the United States Constitution[1] unless they fall within a limited number of carefully defined exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390, 57 L.Ed.2d 290, 298-99, 98 S.Ct. 2408, 2412-13 (1978);

---

[1] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 36 L.Ed.2d 854, 858, 93 S.Ct. 2041, 2043 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55, 29 L.Ed.2d 564, 576, 91 S.Ct. 2022, 2032 (1971); *Chambers v. Maroney,* 399 U.S. 42, 51, 26 L.Ed.2d 419, 428, 90 S.Ct. 1975, 1981 (1970). We adopted this principle under Article III, Section 6 of the West Virginia Constitution in *State v. Duvernoy,* 156 W. Va. 578, 195 S.E.2d 631 (1973):[2]

> "* * * The most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions'. The exceptions are 'jealously and carefully drawn', and there must be 'a showing by those who seek exemption ... that the exigencies of the situation made that course imperative'. " 156 W. Va. at 583, 195 S.E.2d at 634-35, *quoting Coolidge v. New Hampshire,* 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576.[3]

As a corollary to this rule, the burden rests on the State to show by a preponderance of the evidence that the warrantless search falls within an authorized exception. *Mincey v. Arizona, supra; Vale v. Louisiana,* 399 U.S. 30, 26 L.Ed.2d 409, 90 S.Ct. 1969 (1970). Syllabus of *State v. Hacker,* ____ W. Va. ____, 209 S.E.2d 569 (1974); *E.g. Chilton v. State,* 611 P.2d 53 (Alaska 1980); *In re Scott K.,* 24 Cal.3d 395, 595 P.2d 105, 155 Cal. Rptr. 671

---

[2] Article III, Section 6 of the West Virginia Constitution states: "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

[3] We have stated in some cases that the Fourth Amendment and Article III, Section 6 of the *West Virginia Constitution* prohibit only unreasonable searches. *E.g. State v. Smith,* ____ W. Va. ____, 212 S.E.2d 759, 764 (1975). This can only be taken to mean that unless the warrantless search comes within a recognized exception, it is unreasonable and therefore illegal.

(1979), *cert. denied,* 444 U.S. 973, 62 L.Ed.2d 388, 100 S.Ct. 468; *Bruce v. State,* 268 Ind. 80, 375 N.E.2d 1042 (1978), *cert. denied,* 439 U.S. 988, 58 L.Ed.2d 662, 99 S.Ct. 586 (1978); *People v. Calhoun,* 49 N.Y.2d 398, 402 N.E.2d 1145, 426 N.Y.S.2d 243 (1980); *Commonwealth v. Timko,* 417 A.2d 620 (Pa. 1980); *State v. Robalewski,* 418 A.2d 817 (R.I. 1980).

These rules exist to provide constitutional protection for our citizens so that they will be secure from warrantless searches and seizures of their property and personal effects. To secure this right of privacy, the courts have historically required that a search warrant ordinarily must be obtained based on a finding of probable cause and that the person issuing the warrant be a neutral and detached magistrate. Consequently, where a search is conducted without a warrant, the burden rests on the State to demonstrate that it comes within one of the exceptions permitting a warrantless search.[4]

---

[4] The United States Supreme Court has recognized the following exceptions that will permit a warrantless search; which we briefly summarize:

(a) The search of an automobile based on probable cause and exigent circumstances that preclude obtaining a warrant under *Carroll v. United States,* 267 U.S. 132, 69 L.Ed 543, 45 S.Ct. 280 (1925), commonly called the "automobile exception."

(i) As a subcategory of the *Carroll* doctrine, a warrantless search incident to a lawful stop of the vehicle is allowed where after the stop, probable cause arises to believe the vehicle contains contraband or evidence of a crime. *United States v. Brignoni-Ponce,* 422 U.S. 873, 881-82, 45 L.Ed.2d 607, 616-17, 95 S.Ct. 2574, 2580 (1975).

(b) A search of the person incident to their arrest and a limited geographic search for weapons or to prevent the destruction of evidence of a crime. *Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034 (1969).

(c) A pat-down search of the person for weapons incident to a lawful stop based on identifiable suspicious circumstances and a reasonable belief that the suspect is carrying a weapon. *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). cf. *Ybarra v. Illinois,* 444 U.S. 85, 62 L.Ed.2d 238, 100 S.Ct. 338 (1979).

(d) A search made following the hot pursuit of the suspect. *Wardem v. Hayden,* 387 U.S. 294, 18 L.Ed.2d 782, 87 S.Ct. 1642 (1967).

## I. *The Automobile Exception*

### A.

The State contends that the search can be justified under the *Carroll* doctrine announced in *Carroll v. United States*, 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925), where the court concluded that because of the mobility and diminished expectations of privacy surrounding a motor vehicle, warrantless searches could be made under two conditions.[5] First, the police must initially have probable cause to believe that the automobile contains contraband or evidence of a crime. Second, there are

---

(e) Contraband or incriminating evidence obtained in plain view, incident to an initial lawful intrusion. *Coolidge v. New Hampshire*, 403 U.S. 143, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971); *Harris v. United States*, 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992 (1968).

(f) A search made pursuant to an individual's voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041 (1973).

(g) A routine inventory search following the lawful impoundment of a vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976).

(h) Random stops and searches by border officials. *United States v. Martinez-Fuerte*, 428 U.S. 543, 49 L.Ed.2d 1116, 96 S.Ct. 3074 (1976); *Almeida-Sanchez v. United States*, 413 U.S. 266, 37 L.Ed.2d 596, 93 S.Ct. 2535 (1973).

(i) A search incident to a statutory forfeiture proceeding of a vehicle. *Cooper v. California*, 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788 (1967).

[5] Justice Powell in *Arkansas v. Sanders*, 442 U.S. 753, 761, 61 L.Ed.2d 235, 243, 99 S.Ct. 2586, 2591 (1979), states the underpinning of the automobile exception in these terms:

"There are essentially two reasons for the distinction between automobiles and other private property. First, as the Court repeatedly has recognized, the inherent mobility of automobiles often makes it impracticable to obtain a warrant. See, e.g., United States v. Chadwick, 433 US, at 12, 53 L Ed 2d 538, 97 S Ct 2476; Chambers v. Maroney, 399 US, at 49-50, 26 L Ed 2d 419, 90 S Ct 1975; Carroll v. United States, supra. In addition, the configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property."

exigent circumstances which prevent the obtaining of a search warrant.[6]

In the ordinary case under the *Carroll* doctrine, it is the existence of these two factors that enable the police to stop the vehicle and search it. In other words, the *Carroll* doctrine generally presupposes that the police have advanced information that constitutes probable cause to believe the automobile is carrying contraband or evidence of a crime and they are confronted with the vehicle's presence without an opportunity to procure a search warrant thereby giving rise to the exigent circumstances to permit the warrantless search.

The *Carroll* doctrine, in its pure form, does not involve a search based on the initial arrest of the operator or occupant of the vehicle because the police officer had probable cause to believe that such person had committed a felony or is committing a misdemeanor in the presence of the arresting officer. Thus, under *Carroll*, the right to seize or detain the vehicle and to search it arises not out of any present act of unlawfulness by its operator or occupant. The right to stop the vehicle comes about because of prior probable cause to believe that the vehicle contains contraband or evidence of the commission of a crime. The exigent circumstance is that unless the vehicle is detained and searched it will be driven away and, therefore, a warrant need not be obtained.[7]

---

[6] For a detailed analysis of the development of the automobile exception, *see,* Moylan, *The Automobile Exception: What It Is and What It Is Not—A Rationale In Search Of a Clearer Label,* 27 Mercer L. Rev. 987 (1976), and *The Automobile Exception To The Warrant Requirement: Speeding Away From The Fourth Amendment,* 82 W. Va. L. Rev. 632 (1980). A broader discussion of warrantless searches is contained in Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances,* 31 Okla. L. Rev. 110 (1978).

[7] Both *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925), and the latter case of *Husty v. United States,* 282 U.S. 694, 75 L.Ed. 629, 51 S.Ct. 240 (1931), involved automobiles that were stopped and searched because the police had prior probable cause to know the vehicles were being used to transport liquor in

It is clear from the facts of this case that the initial stopping of the automobile did not occur because the officer had probable cause to believe that it was carrying contraband or evidence of the commission of a crime and, therefore, the *Carroll* doctrine in its pure form is not applicable. At the time the trooper made the stop, he knew only that the tail lights were inoperative.

### B.

The *Carroll* doctrine in its pure form requires that there be probable cause and exigent circumstances existing at the time the vehicle is stopped—thus providing the reason for stopping the vehicle and the subsequent search. However, a variation of the *Carroll* doctrine, recognized by the Supreme Court, provides that while an automobile cannot be arbitrarily stopped, it may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made.[8] *E.g. Colorado v. Bannister*, 49 U.S. L. W. 3286 (U.S. October 20, 1980); *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1391 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574 (1975); *United States v. Stevie*, 578 F.2d 204 (8th Cir. 1977), aff'd on rehearing, 582 F.2d 1175 (1978), *cert. denied*, 443 U.S. 911, 61 L.Ed.2d 876, 99 S.Ct. 3102 (1979); *United States v.*

---

violation of the law. Probable cause and exigent circumstances can arise from police radio dispatches where the vehicle carrying stolen property is identified and is subsequently stopped. *Colorado v. Bannister*, 49 U.S. L. W. 3286 (U.S. October 20, 1980). The exigent circumstance in all three of these cases was the insufficient time to procure a warrant because of the mobility of the vehicles—that is, the automobiles could have been removed between the time they were seen and before a warrant could be obtained.

[8] In this situation, the presence of exigent circumstances is ordinarily not a disputed issue because the article's existence are generally not anticipated until the vehicle is stopped and the essential mobility of the vehicle provides the exigency. *Colorado v. Bannister*, 49 U.S. L.W. 3286 (U.S. Oct. 20, 1980).

*Garcia-Rodriguez,* 558 F.2d 956 (9th Cir. 1977), *cert. denied,* 434 U.S. 1050, 54 L.Ed.2d 802, 98 S.Ct. 900 (1978); *United States v. Frisbie,* 550 F.2d 335 (5th Cir. 1977); *People v. Minjares,* 24 Cal.3d 410, 591 P.2d 514, 153 Cal. Rptr. 224 (1979), *cert. denied,* 444 U.S. 887, 62 L.Ed.2d 117, 100 S.Ct. 181; *Cowdin v. People,* 176 Colo. 466, 491 P.2d 569 (1971); *Radowick v. State,* 145 Ga. 231, 244 S.E.2d 346 (1978); *State v. Daigre,* 364 So.2d 902 (La. 1978); *State v. Patino,* 83 N.J. 1, 414 A.2d 1327 (1980); *State v. Smith,* 56 Ohio St.2d 405, 384 N.E.2d 280 (1978).

We have several cases from within this jurisdiction that may be analogized to the foregoing rule. In *State v. Frisby,* ___ W. Va. ___, 245 S.E.2d 622 (1978), *cert. denied,* 439 U.S. 1127, 59 L.Ed.2d 87, 99 S.Ct. 1043 (1979), we recognized that the police could lawfully stop a vehicle when it appeared that it was being operated with an improper out-of-state license plate. After the lawful stop the police in the course of seeking an explanation from the driver as to the validity of his license plate saw a rifle in plain view and smelled marijuana coming from the interior of the vehicle. They arrested the driver for transporting the rifle, seized the rifle and. the vehicle was impounded, all of which was held to be permissible.

In *State v. Smith,* ___ W. Va. ___, 212 S.E.2d 759 (1975), we upheld a warrantless search of a vehicle. In that case, police undercover agents had prior knowledge illegal drugs were being sold at a farm house. Several undercover agents were stationed near the entrance to the farm house when a car approached the entrance. When it was a few feet away from the agents, they heard the passenger yell, "There's pigs everywhere. Hide the stash." At the same time, the passenger was observed reaching for something under the front seat of the car, which the agents thought was a weapon. The car was immediately stopped and the passenger ordered out of the car. Upon a search of the car, a brown bag was found containing drugs. It is clear from the factual recitations in *Smith* that the probable cause and exigent circumstances to permit the warrantless search of the

vehicle arose almost simultaneously with the right to stop the car.

In our earlier cases involving the illegal transportation of alcoholic liquor, we employed the concept that the arrest and search were proper without a warrant where the officer saw the offense being committed in his presence. In *State v. Roberts*, 136 W. Va. 391, 68 S.E.2d 48 (1951), the officer observed the defendant placing the alcoholic liquor in the vehicle and based on these observations arrested the individual and seized the contraband. Probable cause and exigent circumstances were both present.

Analyzing the instant case under this subcategory of the *Carroll* doctrine, we recognize the initial stop of the vehicle for a missing tail light was lawful. *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1931 (1979). Next, we must consider whether the conduct and activities observed by the officer before and after the stop constituted probable cause to justify the seizure of the paper bag. The officer stated that after he followed the vehicle a short distance he turned on his emergency light and noticed that the passenger apparently leaned forward. Since the officer was still in his vehicle, he was not able to observe what, if anything, the passenger was accomplishing by this motion.

A further circumstance was when the driver showed his driver's license with the surname "Moore," this triggered a recollection by the officer that a person with a similar last name had been arrested on a drug-related charge two and one-half years earlier. Finally, the officer shined his light into the vehicle and observed a portion of a brown paper bag protruding from beneath the front seat on the passenger side. For reasons discussed below, we do not believe that these events constituted probable cause to justify the police officer's seizure and search of the paper bag.

The State characterizes the passenger's leaning forward as a "furtive" gesture and argues that this could constitute probable cause. The leading case on furtive

gestures is *People v. Superior Court*, 3 Cal.3d 807, 478 P.2d 449, 91 Cal. Rptr. 729, 45 ALR3d 559 (1970), where the court *in bank* explored in great detail the question of whether a furtive gesture would give rise to probable cause to search a vehicle once it was lawfully stopped.[9] It concluded that because of the ambiguous quality of such gestures that they would not constitute probable cause for a search unless there was some additional reliable information pointing to the fact that there might be contraband or evidence of the commission of the crime present.[10]

---

[9] The United States Supreme Court has spoken on furtive movements in regard to probable cause for an arrest in *Sibron v. New York*, 392 U.S. 40, 66-67, 20 L.Ed.2d 917, 937, 88 S.Ct. 1889, 1904-05 (1968):

"As the trial court explicitly recognized, deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. Brinegar v. United States, 338 US 160, 93 L Ed 1879, 69 S Ct 1302 (1949); Husty v. United States, 282 US 694, 75 L Ed 629, 51 S Ct 240, 74 ALR 1407 (1931); see Henry v. United States, 361 US 98, 103, 4 L Ed 2d 134, 139, 80 S Ct 168 (1959)." (footnote omitted)

[10] The court in *People v. Superior Court*, 3 Cal.3d at 822-23, 478 P.2d at 458-59, 91 Cal. Rptr. at 738-39, gave the following explanation of what a "leaning forward" gesture might mean:

"The observed movement, therefore, might well be nothing more than the driver's act of reaching for his wallet so as to have his license ready for inspection, or reaching for the steering post or glove compartment to obtain the registration card. And as many women drivers keep their handbag—containing their license and other identification—next to them on the floor or between the seats, a reaching motion in that direction would be no less natural for them.

"Furthermore, every motorist knows that the officer will wish to speak with him, however briefly; simple preparations for that conversation are therefore to be expected. It may be necessary, for example, for the driver to roll down his window. If the radio is playing at the time, the driver or a passenger might lean forward to reduce the volume or turn off the set. If the driver was smoking, he might well reach down to extinguish or store his cigarette in the car's ashtray. And if an occupant of the vehicle was consuming food or beverages, similar movements would probably follow." (footnotes omitted)

In *People v. Superior Court, supra,* the furtive gesture of the passenger was raising her head from the passenger side of the front seat and then bending toward the floor and straightening again. The driver upon stopping the car got out and walked back toward the police cruiser, which action the officer considered suspicious—as if the driver did not want the officer to see into the car.

The court, however, concluded that these facts were inadequate to constitute probable cause to search the car for marijuana. Of particular interest was the court's conclusion that the driver's actions could not be imputed to the passenger "[the driver's] walk toward the police car cannot reasonably be deemed to invest her gesture with guilty significance." (3 Cal.3d at 828, 478 P.2d at 463, 91 Cal. Rptr. at 743.)

Although we recognize that probable cause to search a vehicle may arise after it has been lawfully stopped, we conclude, as have other courts, that the probable cause must be based on more than a suspicion that the car may contain contraband or evidence of the commission of a crime. A furtive gesture on the part of the occupant of a vehicle is ordinarily insufficient to constitute probable cause to search a vehicle if it is not coupled with other reliable causative facts to connect the gesture to the probable presence of contraband or incriminating evidence. *United States v. Day,* 455 F.2d 454 (3rd Cir. 1972); *People v. Superior Court, supra; People v. Aviles,* 21 Cal.App.3d 230, 98 Cal. Rptr. 316 (1971); *People v. Goessl,* 186 Colo. 208, 526 P.2d 664 (1974); *People v. Gottenborg,* 41 Ill.App.3d 8, 354 N.E.2d 30 (1976); *Sayne v. State,* 258 Ind. 97, 279 N.E.2d 196 (1972); *People v. Pitts,* 40 Mich. App. 567, 199 N.W.2d 271 (1972); *Thompson v. State,* 487 P.2d 737 (Okla. Crim. 1971); Annot. 45 A.L.R.3d 581 (1972).

While the issue of a furtive gesture was not discussed in *State v. Smith,* 158 W. Va. 663, 212 S.E.2d 759 (1975), it is clear that the passenger's reaching under the seat might be classified as furtive but there it was accompa-

nied by the statement overheard by the officer, "There's pigs everywhere. Hide the stash." This combined with the prior knowledge of the undercover agents that the farm house toward which the vehicle was approaching was a drug distribution center provided the probable cause under exigent circumstances to search the vehicle.

In the present case, we do not find that the officer had probable cause to search the seat under the passenger side and seize the brown paper bag and open it. The furtive gesture of the passenger even when coupled with the vague recollection that a person with the same surname as the driver had been involved in a drug-related offense did not constitute sufficient facts to give rise to probable cause for search. The surname "Moore" is such a common name that we refuse to import, without something more, even an inference that a person carrying that name could be linked to another "Moore" who two and one-half years before was connected with a drug charge.

Moreover, any suspicion attached to the driver because of his surname cannot be carried over or associated to the passenger, who was the person arrested and whose surname was unknown to the officer at the time of the arrest. cf. *Commonwealth v. Long*, 414 A.2d 113 (Pa. 1980). The United States Supreme Court concluded in *Sibron v. New York*, 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889 (1968), that the fact defendant had been observed by a police officer over an eight-hour period talking to known narcotic addicts did not furnish probable cause for the search of his person. *See also McMillon v. Commonwealth*, 212 Va. 505, 184 S.E.2d 773 (1971).

Finally, as in the case of *People v. Superior Court*, *supra*, we refuse to couple the driver's name status in order to enhance or elevate the passenger's furtive gesture to create a probable cause finding.

## II. *Search Incident To An Arrest*

The State also argues that the warrantless search in this case can be upheld under *Chimel v. California*, 395

U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034 (1969), where a warrantless search of the person and the immediate geographic area under his physical control is authorized as an incident to a valid arrest. The effect of *Chimel* was to overrule *United States v. Rabinowitz*, 339 U.S. 56, 94 L.Ed. 653, 70 S.Ct. 430 (1950), and *Harris v. United States*, 331 U.S. 145, 91 L.Ed. 1399, 67 S.Ct. 1098 (1947), which had authorized rather broad geographic warrantless searches of property upon the lawful arrest of a person. *Chimel* confined the warrantless search of property to that limited area immediately under the physical control of the arrested person on the basis that it was necessary to uncover weapons that might be used against the arresting officer and to prevent destruction of evidence by the arrested party.

The predicate for a *Chimel* search, however, is an initial lawful arrest.[11] Here there was no arrest of the defendant-passenger until after the search of the vehicle. The Supreme Court in *Sibron, supra,* stated:

> "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. E. g., Henry v. United States, 361 US 98, 4 L Ed 2d 134, 80 S Ct 168 (1959); Johnson v. United States, 333 US 10, 16-17, 92 L Ed 436, 441, 442, 68 S Ct 367 (1948). Thus the search cannot be justified as incident to a lawful arrest." (392 U.S. at 63, 20 L.Ed.2d at 934-35, 88 S.Ct. at 1902-03.)

### III. *Plain View*

The State finally argues that the "plain view" warrantless search exceptions developed in *Coolidge v. New Hampshire*, 403 U.S. 143, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971), should be utilized to validate the search. In *State v. Stone, _____ W. Va. _____, 268 S.E.2d 50, 55 (1980), we

---

[11] We view *United States v. Robinson*, 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467 (1973), and *Gustafson v. Florida*, 414 U.S. 260, 38 L.Ed.2d 456, 94 S.Ct. 488 (1973), as extending the *Chimel* doctrine to allow a search incident to an arrest for traffic offenses. Since there was no arrest for the traffic offense in the present case, this exception does not arise.

discussed at some length the elements surrounding the "plain view" doctrine and concluded:

> "As set forth in the above cited cases and in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971), the plain view doctrine is discussed in some detail. We glean from those cases that a warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: (1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime. We subscribe to the plain view doctrine as above set forth."

*See also State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445, 454 (1974); *State v. Duvernoy*, 156 W. Va. 578, 586, 195 S.E.2d 631, 636 (1973).

Some courts have restated the first element to be "the discovery of the evidence must have been inadvertent." *E.g. United States v. Berenguer*, 562 F.2d 206, 210 (2nd Cir. 1977); *Reeves v. State*, 599 P.2d 727, 738 (Alaska 1979); *State v. Cook*, 115 Ariz. 188, 194, 564 P.2d 877, 883 (1977); *State v. Parker*, 355 So.2d 900, 904 (La. 1978); *State v. Lane*, 573 P.2d 198, 201 (Mont. 1977); *State v. Williams*, 55 Ohio St.2d 82, 85, 377 N.E.2d 1013, 1016 (1978). Despite the difference in language, both statements address the same problem, which is that the police may not under the guise of an initial lawful search into a constitutionally protected area, such as a search incident to an arrest, use this action as a means of conducting a broad warrantless search. The real import of this limitation is to insure that the police do not convert a lawful arrest or use one of the narrowly recognized exceptions for a warrantless search as a spring

board for a broad warrantless exploration to seize incriminating evidence.[12]

In the present case, the first two requirements were met; the initial intrusion of looking into the stopped vehicle was lawful and we believe that the observation of the paper bag was inadvertent in the sense of "unanticipated" or in the *Stone* sense that it was done without the benefit of search which invaded one's reasonable expectation of privacy. The problem in this case arises in the third requirement of the "plain view" doctrine, whether the police officer had probable cause to believe that the paper bag in the vehicle constituted or contained contraband or evidence of the commission of a crime.

This probable cause inquiry differs from the probable cause inquiry that we have discussed early in this opinion regarding the *Carroll* doctrine. That inquiry concerned the objective facts necessary to permit a warrantless search of a vehicle which has been lawfully stopped and assumes that the evidence may not be in plain view. In the "plain view" exception, we are not

---

[12] Moylan in his article *The Plain View Doctrine: Unexpected Child of The Great "Search Incident" Geography Battle*, 26 Mercer L. Rev. 1047, 1083-84 (1975) perceptively analyzes the history and scope of the entire "plain view" doctrine and states as to the "inadvertent" requirement:

"The evil at which this requirement is aimed is the 'planned warrantless seizure.' The 'inadvertence' requirement is intended simply to prevent the police from using an entry into a 'constitutionally protected area' for purposes of making an arrest − or for any other ostensibly legitimate purpose − as a mere subterfuge for a plain view reconnoitering. There may not be a contrived investigatory reconnaissance aimed at evading the warrant requirement for a search or seizure. There may not be a planned plain view."

LaFave explains the "inadvertent" requirement:

"Although the point is not dealt with adequately in *Coolidge*, it is logical to conclude that what is referred to therein as an 'inadvertent discovery' is the finding of evidence which is not 'anticipated' at a time when and to a degree that a search warrant naming those items could have been obtained." 2 W. LaFave, *Search and Seizure*, § 7.5(d) (1978).

concerned with probable cause as it bears on the right to search for the evidence, since the "plain view" exception is based on the fact that the officer has a lawful right to be where he is when he observes the evidence. The central question in the third requirement of the "plain view" exception is whether from the physical appearance of the object there is probable cause to believe that it represents contraband or incriminating evidence. *United States v. Clark*, 531 F.2d 928, 932 (8th Cir. 1976); *Shipman v. State*, 291 Ala. 484, 486, 282 So.2d 700, 704 (1973); *State v. Cook*, 115 Ariz. 188, 194, 564 P. 2d 877, 883 (1977); *State v. Wilson*, 279 Md. 189 194-95, 367 A.2d 1223, 1227-28 (1977); *City of Warwick v. Robalewski*, 385 A.2d 669, 672 (R.I. 1978); *State v. McGovern*, 77 Wis.2d 203, 210, 252 N.W.2d 365, 369 (1977).

Some courts refer to this probable cause finding—that the object must be "immediately apparent" as being contraband or incriminating evidence—but, this is still tested by an objective probable cause standard. *State v. Meichel*, 290 So.2d 878 (La. 1974); *Dixon v. State*, 23 Md.App. 19, 327 A.2d 516 (1974); *State v. Beaver*, 37 N.C. App. 513, 246 S.E.2d 535 (1978); 2 W. LaFave, *Search and Seizure* §7.5(b) (1978). Obviously, the easiest example of probable cause to seize occurs when the object in "plain view" is contraband itself such as the alcoholic beverage in *Roberts, supra*, or the illegal rifle observed in *Frisby, supra*.

Where, however, the object in plain view does not by its appearance give a ready indication of being contraband, or representing evidence of the commission of a crime, the probable cause finding becomes more complex. In the present case, we decline to hold that the portion of the paper bag protruding from the front seat on the passenger side, when coupled with the meager factual information available to the officer, could constitute probable cause for him to believe the paper bag contained contraband or incriminating evidence. Several cases with similar fact patterns support this conclusion. In *Reeves v. State*, 599 P.2d 727 (Alaska 1979), the officer observed a small opaque balloon which appeared to be

filled with some type of a granular substance. He opened the balloon and discovered it contained heroin. The court found that the officer had no prior probable cause to indentify the object as containing contraband and relied in part on *De Lao v. State*, 550 S.W.2d 289 (Tex. Cr. App. 1977), which also suppressed a red balloon containing heroin for a lack of probable cause.

In *State v. Baxter*, 528 P.2d 347 (Okla. Crim. 1974), a brown bottle was observed in the vehicle and the officer proceeded to open it and extract several tablets for analysis. The court concluded he had no probable cause to conclude that the bottle contained contraband before opening.[13] Several other courts have found the contents of paper or plastic bags not to be in plain view. *State v. Barnes*, 58 Hawaii 333, 568 P.2d 1207 (1977); *State v. Blais*, 416 A.2d 1253 (Me. 1980); *Liichow v. State*, 419 A.2d 1041 (Md. 1980); *State v. Patino*, 83 N.J. 1, 414 A.2d 1327 (1980) (concurring opinion); *Matthews v. Commonwealth*, 218 Va. 1, 235 S.E.2d 306 (1977).

## IV. The Arrest And Subsequent
### *Inculpatory Statements*

Having concluded that the seizure and search of the paper bag was unlawful, we must also conclude that the arrest of the passenger for possession of marijuana was

---

[13] These cases are to be distinguished from *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *United States v. Chadwick*, 433 U.S. 1, 53 L.Ed.2d 538, 97 S.Ct. 2476 (1977), where the police have prior probable cause to believe through a "reliable informant" or otherwise that a closed container does contain contraband or evidence of a crime and seize it. There the issue is whether they have the right to open the container and search it without a warrant. In both *Sanders* and *Chadwick*, the Supreme Court required a warrant since the object has been seized by the police there is no longer any exigent circumstances to justify not obtaining a warrant. The distinction noted in *Sanders* was not only the greater expectation of privacy that attends a closed container but the fact that such container could be seized and stored easier pending the obtaining of a warrant than could a vehicle and therefore exigent circumstances to justify the lack of a warrant, were not present. We have adopted this view in *State v. Tomey*, 163 W. Va. 578, 259 S.E.2d 16 (1979).

unlawful. There is little doubt that if the police lack probable cause to search, thereby making the search unlawful, the subsequent arrest of the individual based on the evidence found in the unlawful search is also unlawful. *Alderman v. United States,* 394 U.S. 165, 22 L.Ed.2d 176, 89 S.Ct. 961 (1969); *Sibron v. New York,* 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889 (1968); *Henry v. United States,* 361 U.S. 98, 4 L.Ed.2d 134, 80 S.Ct. 168 (1959). In *Alderman,* the Supreme Court found that there had been an illegal search of the premises and concluded:

> "Nothing seen or found on the premises may legally form the basis for an arrest or search warrant or for testimony at the homeowner's trial, since the prosecution would be using the fruits of a Fourth Amendment violation. Silverthorne Lumber Co. v. United States, 251 US 385, 64 L Ed 319, 40 S Ct 182, 24 ALR 1426 (1920); Johnson v. United States, 333 US 10, 92 L Ed 436, 68 S Ct 367 (1948); Wong Sun v. United States, 371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963)." 394 U.S. at 177, 22 L.Ed.2d at 176, 89 S.Ct. at 968-69.

We have come to much the same conclusion in Syllabus Point 10 of *State v. Thomas,* 157 W. Va. 640, 203 S.E.2d 445 (1974):

> "An arrest cannot be justified by the fruits of an illegal search nor can a search be justified by what it produces."

*See also State v. Duvernoy,* 156 W. Va. 578, 195 S.E.2d 631, 635 (1973). This same rule is uniformly followed in other jurisdictions. *United States v. Palazzo,* 488 F.2d 942 (5th Cir. 1974); *People v. Leib,* 16 Cal.3d 869, 548 P.2d 1105, 129 Cal. Rptr. 433 (1976); *D'Agostino v. State,* 310 So.2d 12 (Fla. 1975); *People v. Corrado,* 22 N.Y.2d 308, 239 N.E.2d 526, 292 N.Y.S. 648 (1968); *State v. Hoggans,* 35 Or. App. 669, 582 P.2d 466 (1978); *McMillon v. Commonwealth,* 212 Va. 505, 184 S.E.2d 773 (1971).

Moreover, where, as here, the unlawful arrest is immediately followed by inculpatory statements, these

statements are not admissible even though they were made after *Miranda* warnings had been given to the suspect. In *Brown v Illinois*, 472 U.S. 590, 601-03, 45 L.Ed.2d 416, 426-27, 95 S.Ct. 2254, 2261 (1975), it was recognized that there was an interrelationship between the Fifth Amendment right against self-incrimination and the Fourth Amendment right against illegal arrests:

> "Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 US, at 486, 9 L Ed 2d 441, 83 S Ct 407. Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.
>
> "If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See Davis v. Mississippi, 394 US 721, 726-727, 22 L Ed 2d 676, 89 S Ct 1394 (1969). Arrests made without warrant or without probable cause, for questioning or 'investigation,' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.' See Mapp v. Ohio, 367 US, at 648, 6 L Ed 2d 1081, 81 S Ct 1684, 84 ALR2d 933."

*See also Dunaway v. New York*, 442 U.S. 200, 60 L.Ed.2d 824, 99 S.Ct. 2248 (1979); *Stevens v. Wilson*, 534 F.2d 867 (10th Cir. 1976); *Morris v. State*, 399 N.E.2d 740 (Ind. 1980); *State v. Olson*, 287 Or. 157, 598 P.2d 670 (1979); *Hart v. Commonwealth*, ___ Va. ___, 269 S.E.2d 806 (1980).

We have followed *Brown v. Illinois, supra,* in *State v. Canby,* ___ W. Va. ___, 252 S.E.2d 164 (1979), where we held in Syllabus Point 3:

> "Exclusion of a confession obtained as a result of an illegal arrest without a warrant is mandated unless the causal connection between the arrest and the confession has been clearly broken."

In the present case, the illegal arrest of the defendant was followed immediately by the officer placing the defendant in his cruiser, giving the *Miranda* warnings and then questioning the defendant, who admitted that the bag did contain marijuana which he had obtained from a third party. It was this inculpatory statement that was offered at trial over the defendant's objection. Clearly, there was no break in the causal connection between the illegal arrest and subsequent statement.[15]

Consequently, because there was initially an illegal search, the object seized could not be admitted into evidence. The arrest based on the object illegally seized was also invalid, as were the inculpatory statements made immediately following the arrest. For these reasons, the judgment is reversed and the case is remanded for a new trial.

*Reversed and*
*Remanded*

---

[15] Both *Brown v. Illinois*, 422 U.S. 590, 45 L.Ed.2d 416, 95 S.Ct. 2254 (1975), and *State v. Canby*, ___ W. Va. ___, 252 S.E.2d 164 (1979), recognize that the question of the break in the causal connection between the illegal arrest and subsequent confession may be largely a factual one. Here, however, the close proximity in time between the arrest and confession without any subsequent intervening event make the issue a matter of law, as it did in *Brown* and *Canby*.