# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0138** (Mercer County 16-F-63)

**Thomas Kelsor,**
**Defendant Below, Petitioner**

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Thomas Kelsor, by counsel Ruperto Dumapit, appeals the Circuit Court of Mercer County's January 23, 2018, orders denying his motions to suppress evidence seized following a vehicle accident. Respondent State of West Virginia, by counsel Caleb A. Ellis, filed a response. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his motions to suppress.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 14, 2014, petitioner was in a car accident in Mercer County. Deputy Logan Addair of the Mercer County Sheriff's Department arrived to the scene and observed a wrecked vehicle and medical personnel tending to petitioner, who was lying on the ground. Deputy Addair attempted to assist the medical personnel in finding out petitioner's identity because petitioner was incoherent and unresponsive to questioning. Deputy Addair did not find any identification on petitioner's person and decided to check the wrecked vehicle for petitioner's identification. He did not find identification in the front compartment of the vehicle, but observed a backpack in the back seat of the vehicle. During a hearing on petitioner's motion to suppress, Deputy Addair testified that he opened the backpack upon the belief that petitioner's wallet and identification might be inside. Instead, Deputy Addair saw a firearm and what appeared to be drugs in the backpack. Deputy Addair clarified during his testimony that he was not looking for evidence of a possible crime. He immediately zipped the backpack and proceeded to other parts of his investigation regarding the wreck. Deputy Addair remained unaware of petitioner's identity until he questioned petitioner's aunt and friend, who arrived to the scene after he initiated his search. After being

1

contacted by Deputy Addair, Sergent Jesse Ruble of the Mercer County Sheriff's Department executed a search warrant in the evening on the same day as the accident and discovered a "pill bottle containing a plastic baggy containing [an] off white chunk substance," a "plastic baggy containing green vegetation," a "set of digital scales," and a firearm in petitioner's backpack.

On February 10, 2016, petitioner was indicted by a Mercer County grand jury charging him with two counts of possession with intent to deliver a controlled substance, marijuana and crack cocaine, in violation of West Virginia Code § 60A-4-401. On August 17, 2016, petitioner filed a motion to suppress the evidence found in his backpack. Subsequently, the State filed a response arguing that the warrantless search of petitioner's backpack was reasonable under the community caretaker exception to the warrant requirement. On August 30, 2016, the circuit court held a hearing on petitioner's motion to suppress. Deputy Addair testified regarding his recollection of the events and the actions he took at the scene of the accident on August 14, 2014. Following the presentation of the State's evidence and arguments from the parties, the circuit court denied petitioner's motion to suppress. The circuit court entered an order denying petitioner's motion to suppress on September 8, 2016, finding that Deputy Addair acted reasonably under the community care doctrine.

On February 23, 2017, petitioner filed a renewed motion to suppress the evidence found during Deputy Addair's search of his vehicle and backpack. The State filed a response in opposition of the motion, and on March 13, 2017, the circuit court held a hearing on the motion. On March 16, 2017, the circuit court entered an order denying petitioner's renewed motion to suppress, finding that the community care doctrine applied and that the search was proper. On January 23, 2018, the circuit court entered two orders reflecting the rulings of each of the suppression hearings. In the first order, dated August 30, 2016,[1] the circuit court found that "Officer Addair was not searching for evidence of a crime and that the search was reasonable under the community caretaker doctrine. He was there to get identification of an injured party." The circuit court further found that under the community caretaker doctrine, Officer Addair acted reasonably. In the second order, which the circuit judge had dated March 13, 2017,[2] the circuit court adopted its findings as set out in the first order denying petitioner's motion to suppress. Petitioner entered a conditional guilty plea that permitted him to appeal the denials of his motions and appeals from the orders denying his motions to suppress.[3]

We have previously held that

"[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo.* Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness

---

[1]It is unclear from the record as to the delay between when the circuit judge dated the order and when it was ultimately entered.

[2]*See supra* note 1.

[3]Petitioner has not been sentenced.

2

credibility are accorded great deference." Syllabus Point 3, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994).

Syl. Pt. 1, *State v. Hoston*, 228 W. Va. 605, 723 S.E.2d 651 (2012). We have also instructed that

> an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

On appeal, petitioner argues that the circuit court erred in denying his motions to suppress evidence seized following a vehicle accident.[4] In support, petitioner contends that the circuit court erred in applying the community caretaker doctrine exception to justify the search of his vehicle and backpack.[5] He contends that the community caretaker doctrine does not apply to this matter because it requires a prompt or "immediate need" for police to take "swift action" and provide public assistance. *Ullom v. Miller*, 227 W. Va. 1, 13 n.10, 705 S.E.2d 111, 122 n.10 (2010). Petitioner further argues that in addressing the community caretaker doctrine, this Court has held that evidence related to a traffic stop should be suppressed when the investigating officer was unable to articulate specific evidence showing that a citizen was in immediate peril. *See State v. Feicht*, No. 15-0112, 2016 WL 746259 (W. Va. Feb. 25, 2016)(memorandum decision). We do not find petitioner's argument persuasive.

In applying the community caretaker doctrine exception, this Court has held as follows:

> For an encounter to come within the "community caretaker" doctrine exception to the warrant requirement, the State must establish that: (1) given the

---

[4]Also in support of his argument, petitioner alleges that the officer's actions in this case constituted searches under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution and that the emergency doctrine exception to the warrant requirement did not apply. These arguments are uncontested by the State.

[5]In regard to warrantless searches, we have held as follows:

> Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution–subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

Syl. Pt. 1, *State v. Moore,* 165 W. Va. 837, 272 S.E.2d 804 (1980), overruled in part on other grounds by *State v. Julius,* 185 W. Va. 422, 408 S.E.2d 1 (1991).

totality of the circumstances, a reasonable and prudent police officer would have perceived a need to promptly act in the proper discharge of his or her community caretaker duties; (2) Community caretaking must be the objectively reasonable, independent and substantial justification for the intrusion; (3) the police officer's action must be apart from the intent to arrest, or the detection, investigation, or acquisition of criminal evidence; and (4) the police officer must be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion.

*Ullom*, 227 W. Va. at 4-5, 705 S.E.2d at 114-115, syl. pt. 7. Here, the record shows that the State met its burden of proof that the evidence of criminal activity found during Deputy Addair's search fell within the community caretaker exception to the warrant requirement of the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution. Regarding the first requirement under *Ullom*, the State presented testimony to establish that Deputy Addair's search for petitioner's identification, in light of the circumstances, was reasonable. Deputy Addair was not searching for evidence of a crime, but was seeking to identify an injured person who was incoherent and unresponsive to questions. According to the State, Deputy Addair's purpose in searching for petitioner's identification was to assist him after he was in an accident, which fell under the "health, safety and welfare role" of police. *Ullom*, 227 W. Va. at 13 n.10, 705 S.E.2d at 123 n.10.

Next, pursuant to the second requirement of *Ullom*, the State established that community caretaking was the reasonable, independent, and substantial justification for Deputy Addair's search of petitioner's vehicle and backpack. Deputy Addair testified that the medical personnel did not know petitioner's identity and that he was working with them to obtain it. When questioned whether it was important for emergency personnel to know who they are treating, Deputy Addair responded, "[n]ormally, that's the first thing that the rescue squad tries to identify is who that person is, at least a name." Petitioner argues that Deputy Addair's search for identification was unnecessary because the accident report could have been completed at a later time and because his friend and aunt arrived at the scene and could have identified him. However, during his testimony, Deputy Addair clarified that he was looking for identification to aid the medical personnel and not for the accident report. He also explained that he did not know that petitioner's friend and aunt arrived to the scene until after he initiated the search. In fact, the circuit court specifically found that Deputy Addair "was there simply to get an identification of an injured party from the car wreck."

The State satisfied the third requirement of *Ullom* because Deputy Addair's search was separate from any investigation of criminal activity. The circuit court found that Deputy Addair "was not searching for evidence of a crime," which was supported by Deputy Addair's testimony at the suppression hearing that he was not searching for evidence and had no indication of any criminal activity when he responded to the accident. Finally, Deputy Addair testified to specific facts which justified the search, therefore meeting the fourth requirement of *Ullom*. Deputy Addair testified at the suppression hearing regarding his search of petitioner's vehicle and backpack. He testified to the nature of the accident; the fact that petitioner was incoherent and unable to identify himself; that emergency personnel were aiding petitioner, but could not identify him; and that he was attempting to assist the medical personnel in identifying petitioner. He also testified that he was unaware that petitioner's aunt and friend were on their way to the scene and that they did not

arrive on the scene until after he initiated his search. Because the requirements of *Ullom* were met, it is clear that the community caretaker exception to the warrant requirement was applicable to this matter.

Petitioner acknowledges that "a limited, good faith search for identification could still be reasonable under unique circumstances." However, petitioner distinguishes his case from *Wagner v. Hedrick*, 181 W. Va. 482, 383 S.E.2d 286 (1989), wherein the defendant was taken to the emergency room after an accident and the investigating officer attempted to identify him by searching his belongings. The Court found that the defendant did not have a reasonable expectation of privacy in a busy emergency room, particularly when he declined to have his belongings placed in a hospital safe. The Court also noted that the officer's search was "very limited in both scope and purpose." *Id*. at 488, 383 S.E.2d at 292. However, in the matter at hand, petitioner asserts that Deputy Addair's searches "were not limited in scope." He also contends that he had a reasonable expectation of privacy in the car he was driving and "was not given the opportunity to surrender any privacy interest in the searched areas to anyone."

The State agrees that petitioner had a reasonable expectation of privacy in the vehicle and his backpack. However, as discussed above, the search was a valid exception to the protections against unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution pursuant to the community caretaker doctrine. As such, the circuit court did not err in denying petitioner's motions to suppress.

For the foregoing reasons, we affirm the circuit court's January 23, 2018, orders denying petitioner's motions to suppress.

Affirmed.

**ISSUED:** May 24, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5