301 S.E.2d 625

**STATE of West Virginia**

v.

**George David SHINGLETON.**

No. 14750.

Supreme Court of Appeals of West Virginia.

March 29, 1983.

Frederick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellee.

William E. Simonton, III, Pennsboro, for appellant.

PER CURIAM:

George David Shingleton was convicted in the Circuit Court of Pleasants County on a two-count indictment for breaking and entering and for grand larceny from the Pleasants County Bank. Only one of Shingleton's assignments of error requires discussion: whether the passenger compartment of the automobile he was driving was legally searched by the Ohio State Police.[1] We conclude the search and seizure was constitutionally proper and affirm.

I.

At approximately 9:10 p.m. on New Year's Eve, December 31, 1978, Larry Carpenter, state trooper for the State of Ohio, observed a noisy, blue Mustang automobile with West Virginia license plates traveling north on I–70 some seven miles north of Marietta, Ohio, faster than the speed limit. Trooper Carpenter pursued the car, clocking it with a moving radar device at 69 miles per hour in a 55 mile zone.

After stopping the vehicle, the trooper asked Shingleton, the driver, for his driver's license and the registration for the

---

1. The issue of Shingleton's standing to challenge the search and seizure was not raised below and need not be addressed here. We find the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact of the defendant's guilt beyond a reasonable doubt. Syllabus Point 1, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978). Any defect in the wording of the indictment in this case was not prejudicial. The defense was clearly informed as to the nature of the charges against him, and the jury was properly instructed as to the permissible verdicts in the case.

vehicle. Shingleton gave the trooper the driver's license of his passenger, Eugene Damron, in order to conceal the fact that he did not have one. It was only later, after the automobile had been searched, that the trooper discovered the deception.

Using a flashlight, the trooper saw beer bottles, some empty and some unopened, on the floor on the front passenger side and on the floor behind the driver's seat. He also saw two rolls of coins lying in the back seat, and clothes were piled on an object on the floor behind the passenger seat.

The beer bottles prompted the trooper to require Shingleton to perform a coordination test to determine if he was driving under the influence of alcohol. While conducting this test, the officer patted down the floorboard under the driver's seat, checking for weapons. Believing that Shingleton was not intoxicated, the trooper then checked the car's exhaust system and found that it had no pipes or mufflers behind the exhaust manifold. Shingleton explained he was installing a new exhaust system and showed the trooper the replacement parts in the trunk.

The trooper charged Shingleton with speeding and had him follow him to the Washington County, Ohio Sheriff's Office where he would be required to post an appearance bond. Shingleton drove his car to Marietta behind the police cruiser, and parked in an area behind the sheriff's office. As the trooper and Shingleton walked toward the building, the passenger stated that he needed to make a telephone call to obtain bond for Shingleton, and the trooper directed him to a public telephone.

Shortly after entering the sheriff's office, the trooper heard a broadcast over a radio scanner stating, as best he could recall, that police should be on the lookout for old coins taken in a robbery in Meigs County, Ohio. Upon hearing the broadcast, Trooper Carpenter asked Shingleton about the coins he had in the back of his vehicle. Shingleton responded that they were "empty wrappers". The trooper, certain of his observation, replied, "I think there were coins in them." Shingleton responded, "Maybe there was some quarters or something."

The trooper described Shingleton as appearing nervous and evasive in answering questions about the coins. A trooper named Knick testified that he also heard the Meigs County Sheriff's broadcast about old coins, and that he heard Shingleton tell a Trooper Carpenter that he did not know why the coins were in his car, as the car belonged to his brother. Trooper Knick said this caused him to doubt Shingleton's veracity.

Trooper Carpenter then directed Trooper Knick outside to check out the coins in the car. Trooper Knick found the driver's side door to be locked. Using a flashlight, he saw two rolls of coins in the back seat. From the passenger side, he saw two rolls of coins in the front seat floor, and discovered that the car keys had been left in the passenger side doorlock. He opened the door and lifted a coat off a beer carton behind the front passenger seat, revealing money bags bearing a Pleasants County Bank label, and then radioed Trooper Carpenter, who joined him outside to see what had been discovered.

Trooper Carpenter went back inside and turned the robbery case over to the county sheriff's department, while Knick stayed outside to guard the area. Knick testified during the suppression hearing that the reason he did not try to secure a search warrant before searching the vehicle was because he thought the defendant would soon post bond and be on his way and it would take two to three hours to obtain a warrant. Following an *in camera* hearing, the trial court upheld the validity of the search under the "automobile exception" to the warrant requirement, and admitted the evidence at trial.

## II.

■ We discussed probable cause and exigent circumstances justifying automobile searches and seizures in *State v.*

*Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980).[2] Syllabus Point 4 thereof states the applicable law:

An automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made.

There is no question that Shingleton's automobile was legitimately stopped for speeding. The question here is whether there were probable cause and exigent circumstances justifying a warrantless search.

■ The record clearly shows that the facts within the knowledge of the Ohio trooper were sufficient to warrant a prudent man in believing the automobile contained evidence of the commission of a crime. There was thus probable cause for the search. *See, e.g., State v. Duvernoy,* 156 W.Va. 578, 195 S.E.2d 631 (1973); *State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971).

Shingleton's responses to his questioning about the coins was sufficient to elevate the officer's prior suspicions to the level of probable cause. Shingleton became nervous when questioned about the coins, and his responses were both conflicting and evasive. It is particularly significant that the trooper knew Shingleton's assertion about empty rolls of coins was false. Courts generally recognize that responses to police questions are often an ingredient in a probable cause decision. *E.g., State v. Valenzuela,* 121 Ariz. 274, 589 P.2d 1306 (1979) (In banc) (obviously false answer that a pocket was empty despite a bulge, combined with other circumstances, established probable cause); *Taylor v. Commonwealth,* 22 Va. 816, 284 S.E.2d 833 (1981), *cert. denied,* 456 U.S. 906, 102 S.Ct. 1753, 72 L.Ed.2d 163 (1982) (denial of an

obvious fact that a truck was loaded, coupled with numerous other facts, established probable cause); 1 W. LaFave, *Search and Seizure,* § 3.6(f) (1978).

There were also sufficient exigent circumstances present to justify the warrantless search. The trooper who conducted the search believed that it would take two to three hours to obtain a search warrant; we accept that as fact. The trooper also testified that he believed Shingleton might post bond within a short time and be on his way. Furthermore, Shingleton could have easily authorized his passenger, Damron, to use the car. The mobility of the vehicle, given the time necessary to secure a warrant, provided the necessary exigent circumstances justifying the warrantless search.

The State carried its burden of showing that this search came within an exception to the warrant requirement, and the trial court did not err in refusing to suppress the evidence seized from the vehicle.

The judgment is, therefore, affirmed.

Affirmed.

*State v. Boswell,* 170 W.Va. 433, 294 S.E.2d 287 (1982); *State v. Totten,* 169 W.Va. 729, 289 S.E.2d 491 (1982).

---

**2.** For other cases involving searches and seizures of automobiles, consult *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983); *State v. Winston,* 170 W.Va. 555, 295 S.E.2d 46 (1982);