324 S.E.2d 372

**Vernon James JORDAN, Jr.**

v.

**Manfred HOLLAND, Warden, etc.**

No. 16330.

Supreme Court of Appeals of
West Virginia.

Dec. 20, 1984.

Franklin D. Cleckley, Morgantown, for petitioner.

Catherine A. McMullen, Asst. Atty. Gen., Charleston, for respondent.

PER CURIAM:

This case is before us on an original petition for a writ of habeas corpus filed by Vernon James Jordan, Jr.

The relator, Vernon James Jordan, Jr. was indicted in the July 1977 term of the Grand Jury in the Circuit Court of Putnam County and charged with the May 29, 1977 armed robbery of three employees of Shoney's Inc. He was convicted by a jury on March 30, 1977 and sentenced to a term of 25 years in the state penitentiary.

On February 9, 1983, this Court refused to grant Jordan's petition for an appeal. On May 16, 1984, we granted Jordan's petition for a writ of habeas corpus ad subjuciendum and issued a rule to show cause.

Relator assigns as grounds for relief the denial of due process by the failure to strike certain potential jurors for cause; violation of his rights under the Fourth Amendment to the U.S. Constitution and Article III, § 6 of the West Virginia Constitution due to the warrantless search of his truck and the subsequent use of the fruits of the search; violation of his right to counsel under the Sixth Amendment to the U.S. Constitution and Article III, § 14 of the West Virginia Constitution, due to the absence of counsel at a pretrial lineup; and the denial of due process through overly suggestive identification procedure.

Because of certain deficiencies in the record, discussed *infra*, we will remand this case for further evidentiary development on the issue of the violation of relator's right to counsel at the lineup.

At 4:00 a.m. on May 29, 1977, three employees of Shoney's, Inc. in Winfield, Putnam County, were robbed at gunpoint by two men of approximately $2500 belonging to Shoney's Inc. as they were making a night deposit at the Teays Valley Bank. The face of one of the robbers was hidden by a blue ski mask. The face of the other was visible. Escape was made in the car belonging to one of the victims, Gary Barnett. Just before the getaway vehicle exited the bank lot, patrolling deputy sheriffs drove up and gave chase at high speed. The fleeing robbers successfully eluded their pursuers.

Relator's pickup truck was found by Deputy Sheriff Roger Blankenship at 5:25 a.m., about 75 yards from the bank. It was searched and a registration certificate bearing relator's name was found. Identification papers of Walter Holton were also found. Later in the day, an arrest warrant was obtained, charging the relator with the crime of armed robbery.

At 7:30 a.m., deputy sheriffs discovered two blue ski masks, a money bag, $2207 in currency and checks, and a bank deposit ticket from Shoney's. The discovery was made along the escape route, approximately one mile from the bank.

The next day, at about 5:00 p.m., Walter Holton was found standing next to the highway near the area where the money was discovered. Upon identifying himself, he was arrested.

Police officers made a search of the area and about three hours later they discovered the relator, partially covered by leaves, lying on the ground next to a fallen tree trunk about 15 feet from the road. Jordan was asked to identify himself. When he did so, he was arrested, although the officers did not have the arrest warrant in their possession, and he was advised of his rights.

Holton and Jordan were then taken to the Putnam County Jail. The record we have before us does not reveal when relator was first taken before a magistrate to be advised of his constitutional rights nor does it reveal when relator first obtained legal representation.

At about 7:00 p.m. on the day following relator's arrest and incarceration, a lineup was held at the jail. One of the victims, Gary Barnett, identified relator as the robber with the ski mask. A second victim, Richard Stone, identified Holton but not Jordan. The third victim did not view the lineup because she believed she would be unable to make an identification. No lawyer was present.

At trial, Barnett testified that he had *identified Vernon Jordan at a lineup.* Barnett and Stone testified that they both had identified another individual as the robber whose face was uncovered. Stone testified that he did not identify Jordan. Barnett explained that the identification of Jordan at the lineup was based upon Jordan's

physical build, not his face. Lt. Dave Alford, of the Putnam County Sheriff's Department, who arranged and conducted the lineup, testified that Stone identified "one suspect" but did not identify Jordan, and that Barnett identified Jordan and another suspect.

The relator contends that failure of the trial court to suppress evidence of the lineup identification violated his rights to due process and his right to counsel.

■ In syllabus point 3 of *State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982), we held:

> The admission at trial of the testimony of a witness that he identified an accused prior to trial at a police initiated line-up or police initiated one-on-one confrontation between the witness and the accused, which pretrial identification procedure was a violation of the accused's right to counsel under the Sixth Amendment to the Constitution of the United States and under art. III, § 14, of the Constitution of West Virginia, constitutes reversible error, unless the admission of such testimony at trial is shown to be harmless constitutional error.

In his memorandum of law, relator asserts that at the time of the lineup, he had obtained legal representation. It is not clear whether counsel was appointed or retained. Relator does not apprise us, nor does the record reveal, when he was first presented by police to a magistrate.

In *State v. Gravely*, in determining whether an accused has the right to counsel at a police-initiated pretrial identification proceeding, we held that the right to counsel attaches when an adversary judicial criminal proceeding is instituted. *See*

also *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *State v. Wyer*, 173 W.Va. 720, 320 S.E.2d 92, 101 (1984).

We identified this initial juncture as the point in time when "the defendant after his arrest is taken before a magistrate pursuant to *W.Va.Code*, 62–1–5 [1965] and is, *inter alia*, informed pursuant to *W.Va. Code*, 62–1–6 [1965], of the complaint against him and of his right to counsel." Syl. pt. 1, in part, *State v. Gravely, supra.*

■ Because of the deficiency in the record, we are unable to determine whether the relator was taken to a magistrate and advised of his right to counsel prior to his being placed in a lineup. Hence, we are unable to determine whether the relator had a right to the assistance of counsel at the lineup. We, therefore, remand this case to the Circuit Court of Putnam County for the taking of additional evidence on the question of relator's right to counsel at the lineup. *See State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

■ If it be determined that the relator was taken before a magistrate, after arrest and prior to the lineup, and then requested appointment of counsel or indicated that he had counsel to represent him or, prior to the lineup, expressed a desire to be represented by counsel, then he will be entitled to a new trial.[1]

The relator's second contention with respect to the lineup identification is that it was overly suggestive and that he was

---

1. The admission of testimony about the out-of-court identification cannot be deemed to have been harmless. At trial, there was, at best, an implicit in-court identification of the relator. The testimony of Barnett focused on the lineup, where he identified "Vernon Jordan." At no point in the trial did Barnett directly identify Jordan. Thus, the only testimony concerning an identification of the relator was the product of the alleged violation of relator's right to counsel. The State, in arguing that the right to counsel violation was harmless because the lineup was not conducted in a suggestive manner,

looks for harm in the wrong place. We find harm in the use, at trial, of the evidence obtained in violation of the right to counsel. This is the proper application of the *per se* exclusionary rule enunciated in *Gilbert v. California*, 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178 (1967).

If a new trial is awarded, predicated on the denial of the relator's right to the assistance of counsel at the lineup, all evidence pertaining to the lineup, including the identification of another individual, will be inadmissible.

thereby denied due process. We find no merit in this contention.

■ The deputy sheriff who arranged the lineup testified at a pretrial suppression hearing that he made a selection of four jail inmates, in addition to the two suspects, out of a total inmate population of approximately 20. He further testified that those in the lineup were all approximately the same height and weight, although he did not have the benefit of the participants' jail cards, with the exception of relator's,[2] containing such vital statistics. Relator contends that none of the others in the lineup resembled the relator. The only potential substantiation for this contention is a color photograph of the lineup participants that was introduced at the suppression hearing.[3] The photograph shows that Jordan and Holton were the only ones who were clean-shaven. However, in light of testimony that relator was identified as the robber whose face was covered with a ski mask, such characteristics as facial hair are insignificant for the purpose of determining suggestiveness.

Further, we find that the photograph does not verify relator's claim that the other lineup participants were of different physical stature from the relator. We notice that the photograph is actually a composite of two photographs taped inartfully together so that the two men on the extreme right appear taller in relation to the other four men. The photograph(s) was (were) apparently taken on an angle looking down at the men, the relator's body is partially obscured, and his head is slightly bowed. It is, therefore, impossible to assess relator's size relative to that of the other participants.

We do not believe that the record shows that the lineup procedure was conducted in a suggestive manner. We wish to emphasize that our discussion of suggestiveness is only intended as guidance to the circuit court, in the event that it be subsequently

determined that relator's right to counsel was not violated.

Moreover, in the event of a retrial, any potential in-court identification testimony must be scrupulously examined, *in camera*, because, it must be emphasized, the lineup was the first occasion for the robbery victims to view the relator's face. Barnett testified that he could only identify his assailant's body. Determination of whether there is an independent source must adhere to the standards set forth in *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976).

Relator contends that his right against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article III, § 6 of the West Virginia Constitution was violated when his truck was searched without a warrant and the evidence seized subsequently used against him at trial.

We recognize that the legitimacy of a warrantless search of an automobile rests on two conditions: "In order to come within the automobile exception which authorizes a warrantless search, the police must initially have probable cause to believe that the automobile contains contraband or evidence of a crime. Second, there must be exigent circumstances which prevent the obtaining of a search warrant." Syl. pt. 3, *State v. Moore,* 165 W.Va. 857, 272 S.E.2d 804 (1980).

■ The relator's truck was parked in the vicinity of the bank, and it was the only vehicle nearby that Blankenship did not recognize. There was an empty holster on the floor, in plain view, and Blankenship had been alerted that the robbers were armed. The hood of the truck was warm.

These facts are sufficient to warrant a prudent man in believing that the vehicle was involved in the robbery. *See State v. Shingleton,* 171 W.Va. 668, 301 S.E.2d 625, 627 (1983).

---

**2.** Jordan's jail card described him as being five foot eleven inches tall and weighing 200 pounds. This was close to a description given by Barnett shortly after the robbery.

**3.** The photograph was shown to witnesses but was not admitted into evidence at the trial.

■ After a check of the temporary license plate failed, Blankenship entered the truck, opened the glove compartment, and found the temporary registration certificate bearing relator's name. A warrantless search of the glove compartment for ownership identification in these circumstances is not unreasonable. First, there is a likelihood that such information will be found in the glove compartment, *see W. Va. Code,* 17A–3–13 [1951];[4] and second, the exigency created by the flight of felons, necessitated that the search be conducted without delay. *See State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

■ We conclude, therefore, that the seizure of the registration certificate, its subsequent use in obtaining an arrest warrant, and its introduction at trial to prove ownership of the vehicle did not violate relator's rights under the Fourth Amendment of the U.S. Constitution or Article III, § 6 of the W.Va. Constitution.

■ We also conclude that there was no violation of relator's constitutional rights by the seizure of the empty holster, since this evidence was in "plain view." *State v. Boswell,* 170 W.Va. 433, 294 S.E.2d 287 (1982); *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980); *State v. Moore, supra.*

The relator contends that the arrest warrant was issued without probable cause and was based on the fruits of an illegal search. Since we have found no constitutional violation in connection with the search of relator's truck, the latter contention is without merit. As for the former, we are unable to ascertain from the record what information the magistrate had when he issued the warrant, and are therefore unable to determine whether the magistrate had sufficient facts on which to base a probable cause determination.

■ Determination of the lawfulness of the previously issued arrest warrant is of no consequence because the actual arrest was lawful. The arresting officers found the relator covered with leaves and lying beside a log, after searching the area near where the money was found and after arresting another suspect in the same area. The officers knew the relator's name as the owner of the truck. When Jordan identified himself, he was immediately arrested. This set of facts is sufficient to support a warrantless arrest. *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980).

Relator contends that he was denied his right to due process by the failure of the trial court to strike certain jurors for cause. Relator moved to strike five members of the venire on the ground of friendship with police officers who were potential witnesses. The motion was denied by the trial judge, believing that acquaintanceship with a potential witness is not cause for striking a prospective juror and that, upon questioning, including individual *voir dire,* these jurors demonstrated objectivity.

The trial court also questioned one potential juror who was employed by the Department of Welfare. She replied that her job did not bring her into contact with the office of the prosecuting attorney, and that neither her position nor the fact that she was employed by the State would effect her ability to be a fair and impartial juror. *See State. v. West,* 157 W.Va. 209, 200 S.E.2d 859 (1973).

■ "A defendant upon trial of a felony is entitled to a panel of twenty jurors each free from bias or prejudice before being called upon to exercise his right of peremptory challenges." Syl. pt. 1, *State v. Gargiliana,* 138 W.Va. 376, 76 S.E.2d 265 (1953). We find no error in the trial court's refusal to strike any of the jury venire for cause.

---

4. *W.·Va.Code,* 17A–3–13 [1951] provides:

   Every owner upon receipt of a registration card shall write his signature thereon with pen and ink in the space provided. Every such registration card shall at all times be carried in the vehicle to which it refers or shall be carried by the person driving or in control of such vehicle who shall display the same upon demand of a police officer or any officer or employee of the department [of motor vehicles].

   *See* 2 W. Lafave, *Search and Seizure* § 7.4(d), 584–5 (Supp.1984).

For the reasons stated above, this case is remanded to the Circuit Court of Putnam County for further proceedings consistent with this opinion.

Writ granted as moulded.