IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

JANUARY 2020 TERM

FILED
February 25, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 18-0963
_____

STATE OF WEST VIRGINIA,
Respondent

v.

RAYMOND C. HOWELLS, JR.,
Petitioner

_____

Appeal from the Circuit Court of Fayette County
Honorable Paul M. Blake, Jr., Judge
Criminal Action No. 18-F-102

AFFIRMED
_____

Submitted: February 11, 2020
Filed:  February 25, 2020

James Adkins, Esq.                                Patrick Morrisey, Esq.
Assistant Public Defender                    Attorney General
Fayetteville, West Virginia                   Benjamin F. Yancey, III, Esq.
Attorney for Petitioner                        Assistant Attorney General
                                                          Charleston, West Virginia
                                                          Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WORKMAN  dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "Electronic interception by law enforcement authorities of a person's conduct or oral communications in his or her home is governed by W.Va. Code §§ 62-1F-1 to-9." Syl. pt. 2, *State v. Hoston*, 228 W. Va. 605, 723 S.E.2d 651 (2012).

2. A law enforcement officer may not engage in electronic interception of conduct or oral communications in a person's home without first obtaining an order authorizing that interception unless, pursuant to W.Va. Code § 62-1F-9 (2007), the officer can establish: (1) a situation exists such that an order authorizing such interception cannot with due diligence be obtained; (2) a factual basis for issuance of an order exists; and (3) it is determined that exigent circumstances exist which prevent the submission of an application for an order to a court.

3. Subsequent to an electronic interception of conduct or oral communications under W.Va. Code § 62-1F-9 (2007), a law enforcement officer must submit an application in accordance with W.Va. Code § 62-1F-3 (2007), for an order to a magistrate or judge of the circuit within the county wherein the person's home is located as soon as practicable, but not more than three business days after the electronic interception.

4. An order entered pursuant to W.Va. Code § 62-1F-9 (2007) that approves of an electronic interception of conduct or oral communications and is made retroactive, must recite the exigent circumstances that prevented a law enforcement officer from obtaining an order before engaging in electronic interception in a person's home.

**Hutchison, Justice**:

This appeal was brought by Raymond C. Howells, Jr. (hereinafter the "Petitioner") from an October 10, 2018, order of the Circuit Court of Fayette County sentencing him to two terms of 1 to 5 years of imprisonment. [1] The Petitioner was convicted by a jury of two counts of delivery of a controlled substance. In this appeal the Petitioner argues that the circuit court committed error in not suppressing evidence of an audio/video recording of one of the two drug transactions. The Respondent (hereinafter the "State") argues that no reversible error occurred and that the conviction should be affirmed. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

The record in this case indicates that on June 12, 2017, Detective S. Morris and Detective R. Callison of the Fayette County Sheriff's Department were looking for a missing confidential informant named Michelle. The Detectives were able to learn from another confidential informant that Michelle was staying at the Petitioner's home in Gauley Bridge, West Virginia and that the Petitioner sold drugs. The Detectives, operating undercover, went to Petitioner's home. When the Petitioner responded to the Detectives'

---

[1] The sentences were ordered to run consecutively.

knock at his door, the Detectives asked him if Michelle was there. The Detectives also informed the Petitioner that Michelle supplied them with drugs whenever they came to town. The Petitioner informed the Detectives that he could supply them with drugs and asked how much they wanted. The Detectives informed the Petitioner that they wanted $20 worth of methamphetamine. The Petitioner told the Detectives to come back in a little while and he would have the methamphetamine for them.

The Detectives left the Petitioner and drove their car a short distance from his home and parked. It appears that while the Detectives waited in their car Detective Morris put on an audio/video recording device. The Detectives returned to Petitioner's home after about a half hour. The Petitioner invited the Detectives into his home. While inside the home Detective Callison gave the Petitioner $20 and the Petitioner gave him a baggie that contained methamphetamine. Before the Detectives left Petitioner's home, he gave Detective Callison his phone number.

On the morning of June 13, 2017, Petitioner agreed to meet Detective Callison in a Walmart parking lot for the purpose of selling the Detective one gram of methamphetamine for $100. Prior to the meeting Detective Morris obtained an electronic interception order from a magistrate, for the drug transaction that had occurred in Petitioner's home on June 12. The Detectives eventually met the Petitioner in the Walmart parking lot and got into his car. Detective Morris was wearing an audio/video recording

2

device at the time.  As Detective Morris secretly recorded the transaction inside the car, Detective Callison gave the Petitioner $100 and the Petitioner gave the Detective a bag containing methamphetamine.

On May 10, 2018, a grand jury returned a two count indictment against the Petitioner.  The indictment charged the Petitioner with the delivery of a controlled substance on June 12 and 13 of 2017.  A one day jury trial was held on August 24, 2018. The State called several witnesses, including Detective Callison and Morris.  During the trial the State introduced into evidence the audio/video recordings of June 12 and 13. The defendant did not testify, but he did put on a case-in-chief in which he only called Detective Callison and Morris.  The jury returned a verdict convicting the Petitioner of both charges in the indictment.  Subsequent to the Petitioner's sentence this appeal followed.

## II.

### STANDARD OF REVIEW

The Petitioner has couched his appeal as a challenge to the circuit court's failure to suppress evidence.  We have held,

> On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*.  Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard.  In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference.

Syl. pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). With this review standard in mind we turn to the merits of the appeal.

## III.

## DISCUSSION

In this appeal the Petitioner argues that the circuit court committed error by refusing to suppress all evidence related to the June 12 drug transaction, on the grounds that such evidence was "obtained as a result of a recorded transaction within the Petitioner's home without an Electronic Intercept Order issued prior to the transaction."[2] The Petitioner contends that this conduct violated our decision in *State v. Mullens*, 221 W. Va. 70, 650 S.E.2d 169 (2007) and was not in compliance with the Electronic Interception of Conduct or Oral Communications in the Home Act.[3] The State argues that the evidence was properly admitted because "exigent circumstances" existed to justify entering Petitioner's home wearing an audio/video recording device without a court order.

As noted, the Petitioner contends that the decision in *Mullens* required the Detectives obtain an electronic intercept order before they entered his home with an audio/video recording device. In *Mullens* the police employed an informant to wear an

---

[2] The Petitioner has not asserted error with regards to the conviction and sentence involving the June 13 drug transaction.

[3] Discussed *infra*.

4

audio/video device to record a drug transaction inside the defendant's home. The police did not obtain judicial authorization before using the audio/video recording device because the West Virginia Wiretapping and Electronic Surveillance Act ("Wiretapping Act"), W. Va. Code § 62-1D-1 *et seq*., did not require judicial authorization when one party to the recording consented thereto. Subsequent to the drug transaction in *Mullens*, the defendant was indicted for delivery of a controlled substance and conspiring to deliver a controlled substance. The defendant entered a conditional plea and preserved his right to challenge the circuit court's refusal to suppress all the evidence obtained against him as a result of the audio/video recording. On appeal, the defendant argued that the police were required to obtain judicial authorization before sending an informant into his home wearing an audio/video recording device.

This Court agreed with the defendant in *Mullens* and reversed his conviction and remanded the case to allow him to withdraw the guilty plea. We held in *Mullens* that, although the one-party consent exception in the Wiretapping Act did not require the police to obtain judicial authorization to send an informant into a person's home wearing an audio/video recording device, the Search and Seizure Clause of the State Constitution required prior judicial authorization to enter the home of a non-consenting party. Accordingly, this Court held the following in syllabus points 2 and 4 of *Mullens*:

> 2. It is a violation of West Virginia Constitution article III, § 6 for the police to invade the privacy and sanctity of a person's home by employing an informant to surreptitiously use an

5

electronic surveillance device to record matters occurring in that person's home without first obtaining a duly authorized court order pursuant to W. Va. Code § 62–1D–11 (1987) (Repl.Vol.2005). To the extent that *State v. Thompson*, 176 W.Va. 300, 342 S.E.2d 268 (1986), holds differently, it is overruled.

4. Article III, § 6 of the West Virginia Constitution prohibits the police from sending an informant into the home of another person under the auspices of the one-party consent to electronic surveillance provisions of W. Va. Code § 62–1D–3(b)(2) (1987) (Repl.Vol.2005) where the police have not obtained prior authorization to do so pursuant to W. Va. Code § 62–1D–11 (1987) (Repl.Vol.2005).

*Mullens* is not dispositive in this case because the Detectives did not act pursuant to the Wiretapping Act. The Legislature responded to the decision in *Mullens* during the Second Extraordinary Session of 2007, by enacting the Electronic Interception of Person's Conduct or Oral Communications in the Home by Law Enforcement Act ("Electronic Interception Act"), W. Va. Code § 62–1F–1 et seq. (2007). The Detectives' conduct in entering the Petitioner's home wearing an audio/video recording device was governed by the Electronic Interception Act, not the Wiretapping Act under consideration in *Mullens*.

We have previously recognized that pursuant to the specific provisions of the Electronic Interception Act, "[e]lectronic interception by law enforcement authorities of a person's conduct or oral communications in his or her home is governed by W. Va. Code §§ 62-1F-1 to-9." Syl. pt. 2, *State v. Hoston*, 228 W. Va. 605, 723 S.E.2d 651 (2012). The

6

Electronic Interception Act requires law enforcement officials obtain a court order authorizing the use of a hidden audio/video recording device in the home of a nonconsenting person. More specifically W. Va. Code § 62–1F–2(a) (2007) provides, in part, that "[p]rior to engaging in electronic interception … an investigative or law-enforcement officer shall … first obtain from a magistrate or a judge of a circuit court within the county wherein the nonconsenting party's home is located an order authorizing said interception."

The Electronic Interception Act sets out an exception that permits electronic interception without a prior court order. This exception is outlined in W.Va. Code § 62-1F-9 (2007) as follows:

> Notwithstanding any other provision of this article, when: (1) a situation exists with respect to engaging in electronic interception before an order authorizing such interception can with due diligence be obtained; (2) the factual basis for issuance of an order under this article exists; and (3) it is determined that exigent circumstances exist which prevent the submission of an application under section three of this article, conduct or oral communications in the person's home may be electronically intercepted on an emergency basis if an application submitted in accordance with section three of this article is made to a magistrate or judge of the circuit within the county wherein the person's home is located as soon as practicable, but not more than three business days after the aforementioned determination. If granted, the order shall recite the exigent circumstances present and be retroactive to the time of such determination. In the absence of an order approving such electronic interception, the interception shall immediately terminate when the communication sought is obtained or when the application for the order is denied, whichever is earliest. If

7

granted, the order shall recite the exigent circumstances present and be retroactive to the time of such determination. In the absence of an order approving such electronic interception, the interception shall immediately terminate when the communication sought is obtained or when the application for the order is denied, whichever is earliest.

We find no ambiguity in this statute under the facts of this case. *See* Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Unlike the Wiretapping Act that was at issue in *Mullens*, the Electronic Interception Act expressly authorizes entry into a person's home wearing an audio/video recording device without a prior judicial order when exigent circumstances exist. This Court has noted that "[i]n West Virginia, the presence of exigent circumstances may justify a search and seizure without a warrant." *State ex rel. Adkins v. Dingus*, 232 W. Va. 677, 687, 753 S.E.2d 634, 644 (2013). In syllabus point 1 of *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980), overruled on other grounds by *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991) we set out the general rule regarding the exigent circumstances exception to a court order:

> Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing

8

> by those who seek exemption that the exigencies of the situation made that course imperative.

We have also observed that

> [e]xigent circumstances may exist in many situations: three well recognized situations are when police reasonably believe (1) their safety or the safety of others may be threatened, (2) quick action is necessary to prevent the destruction of potential evidence, or (3) immediate action is necessary to prevent the suspect from fleeing.

*State v. Kendall*, 219 W. Va. 686, 692, 639 S.E.2d 778, 784 (2006), quoting *State v. Buzzard*, 194 W. Va. 544, 549 n.11, 461 S.E.2d 50, 55 n.11 (1995). *See State v. Boyd*, 238 W. Va. 420, 438, 796 S.E.2d 207, 225 (2017) ("The fact that Mr. Wyche was in custody in Maryland made it extremely likely that any gunshot residue on his hands would be destroyed by the time he eventually returned to West Virginia. Under these facts, exigent circumstances existed for the minimal intrusion of swabbing his hands for possible gunshot residue."); *Jarrell v. Ballard*, No. 12-0616, 2013 WL 1632553, at *8 (W. Va. Apr. 16, 2013) (Memorandum Decision) ("When Petitioner left his home in the company of the police at approximately 1:30 a.m., the police also knew that Petitioner's son was left at the home and was, therefore, in a position to destroy or conceal the murder weapon. The court finds that exigent circumstances existed to proceed immediately with the search and seizure for this weapon behind Petitioner's home."); Syl. pt. 2, *State v. Mullins*, 177 W. Va. 531, 355 S.E.2d 24 (1987) ("A warrantless arrest in the home must be justified not only by probable cause, but by exigent circumstances which make an immediate arrest imperative."); *State v. Shingleton*, 171 W. Va. 668, 670, 301 S.E.2d 625, 627 (1983) ("The

9

mobility of the vehicle, given the time necessary to secure a warrant, provided the necessary exigent circumstances justifying the warrantless search.").

In light of our recognition that exigent circumstances may justify a search and seizure without a court order, we now hold that a law enforcement officer may not engage in electronic interception of conduct or oral communications in a person's home without first obtaining an order authorizing that interception unless, pursuant to W. Va. Code § 62-1F-9 (2007), the officer can establish: (1) a situation exists such that an order authorizing such interception cannot with due diligence be obtained; (2) a factual basis for issuance of an order exists; and (3) it is determined that exigent circumstances exist which prevent the submission of an application for an order to a court. Subsequent to an electronic interception of conduct or oral communications under W. Va. Code § 62-1F-9 (2007), a law enforcement officer must submit an application in accordance with W. Va. Code § 62-1F-3 (2007), for an order to a magistrate or judge of the circuit within the county wherein the person's home is located as soon as practicable, but not more than three business days after the electronic interception. An order entered pursuant to W. Va. Code § 62-1F-9 (2007) that approves of an electronic interception of conduct or oral communications and is made retroactive, must recite the exigent circumstances that prevented a law enforcement officer from obtaining an order before engaging in electronic interception in a person's home.

10

The test for exigent circumstances is based on the totality of the circumstances. *See State v. Kendall*, 219 W. Va. 686, 692, 639 S.E.2d 778, 784 (2006). We have held that "[t]his is an objective test based on what a reasonable, well-trained police officer would believe." Syl. pt. 2, in part, *State v. Canby*, 162 W. Va. 666, 252 S.E.2d 164 (1979). Moreover, "[t]he existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the police could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant." Syl. pt. 7, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

In the instant case the Petitioner argues that the order entered pursuant to W. Va. Code § 62-1F-9, purporting to find exigent circumstances, did not recite what those circumstances were as required by the statute. Consequently, the Petitioner contends that his conviction and sentence for the June 12 offense should be vacated. The State concedes that the intercept order failed to set out what the exigent circumstances were. However, the State argues that this was not fatal because the circuit court found that the testimony of the Detectives at trial established that exigent circumstances existed. Detective Morris testified on the issue as follows:

> Q. And did you have the court order on you to do the recording at his residence?
>
> A. Not at that time.

11

Q. You didn't—you went and you took a video when you didn't have the permission under the law to do so?

A. That's correct, sir. The reason being, on the first instance, we made arrangement to meet him on his porch. I did not know that we was going to go inside of his residence on the second occasion. It wasn't our intentions to go inside his residence on the second occasion.

\*\*\*

Q. What's the exigent circumstance?

A. We'd previously arranged to meet outside, and he invited us in the house, which it was almost midnight; there was no magistrate on duty. So the first thing the next morning I went to the magistrate's office to obtain the order.

\*\*\*

Q. Wouldn't it have been just as easy to await and get the warrant and go back the next day?

A. No, sir, not with the way the first meeting went.

Q. And why is that?

A. Because he said he was going to get methamphetamine for us to purchase and to come back later. I could not wait till the next day for that.

In our review of the record, it is clear to this Court that the testimony of both Detectives established that exigent circumstances prevented them from obtaining an order authorizing the use of an audio/video recorder in the Petitioner's home.[4] The Detectives

---

[4] The Petitioner has not argued in his brief that the Detectives failed to show exigent circumstances at trial, or that they failed to actually present the exigent circumstances to the magistrate. The Petitioner's argument is simply that the order did not contain those facts.

12

believed that the drug transaction would occur on the Petitioner's porch and therefore they did not initially seek a court order to wear the audio/video recorder. *See Mullens*, 221 W. Va. at 88 n.45, 650 S.E.2d at 187 n.45 ("Our decision has no impact on the authority of the police to place a bodywire on an informant to record communications with a suspect outside the suspect's home."). Once the Petitioner invited the Detectives into his home, it was simply not practical for them to abruptly tell the Petitioner they had to go, but they would be back. Although the subsequent order issued by the magistrate failed to comply with the statute by setting out the exigent circumstances that the Detectives testified to at trial, we find this to be harmless error. We have noted that "[t]he doctrine of harmless error is firmly established by statute, court rule and decisions as a salutary aspect of the criminal law of this State." *State v. Blair*, 158 W. Va. 647, 659, 214 S.E.2d 330, 337 (1975) (citations omitted). Further, "[a]s to error not involving the erroneous admission of evidence, we have held that nonconstitutional error is harmless when it is highly probable the error did not contribute to the judgment." *State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995). *See State v. Atkins*, 163 W. Va. 502, 510, 261 S.E.2d 55, 60 (1979) ("where a nonconstitutional error has been asserted, we have adopted the rather general rule that the case will not be reversed unless the error is prejudicial to the defendant.").

Insofar as the exigent circumstances were testified to during the trial, the Petitioner suffered no prejudice from the failure to set out those facts in the intercept order.[5] *See State v. David K.*, 238 W. Va. 33, 44, 792 S.E.2d 44, 55 (2016) ("the circuit court's failure to follow the procedural safeguards contained in W.Va. Code § 62–6B–1 *et seq.* was harmless error."); *State v. Blake*, 197 W. Va. 700, 705, 478 S.E.2d 550, 555 (1996) ("a conviction should not be reversed if we conclude the error was harmless or unimportant in relation to everything else the jury considered on the issue in question.") (internal quotation marks and citation omitted).[6]

---

[5] The Petitioner has cited to our decision in *State v. Adkins*, 176 W. Va. 613, 346 S.E.2d 762 (1986), where it was held that during a suppression hearing a circuit court should not permit testimony about a search warrant affidavit, issued under Rule 41(c) of the West Virginia Rules of Criminal Procedure, that was not contained in the affidavit. *Adkins* is not controlling because the intercept order in this case was not issued under Rule 41(c). Moreover, a violation of *Adkins* is not automatic reversal; a violation is subject to harmless error. See *State v. Corbett*, 177 W. Va. 397, 399 n.3, 352 S.E.2d 149, 150 n.3 (1986) (Affirming conviction and noting the following: "Here, the trial court permitted the State to bolster the affidavit by considering the testimony of the issuing magistrate and the affiant police officer about facts not contained in the affidavit. This was error under Rule 41(c) since this information was not contemporaneously recorded. However, this error does not affect the basic validity of the warrant affidavit itself.").

[6] The last issue raised by the Petitioner simply has no merit. The Petitioner argued that he was denied due process because the prosecutor was allowed to admit "illegally obtained evidence in violation of the Electronic Intercept Act." Insofar as we have determined that exigent circumstances justified the conduct of the Detectives, the evidence they collected was lawfully obtained.

14

## IV.

## CONCLUSION

In view of the foregoing, we affirm the October 10, 2018, order of the Circuit Court of Fayette County sentencing the Petitioner to two terms of 1 to 5 years of imprisonment.

AFFIRMED.