IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0211

_____

FILED

**November 9, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

V.

CHARLES ERIC WARD,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Raleigh County
The Honorable Robert A. Burnside, Jr., Judge
Criminal Action No. 21-F-402

REVERSED AND REMANDED

_____

Submitted: October 17, 2023
Filed: November 9, 2023

Gary Collias, Esq.
Appellate Advocacy Division
Public Defender Services
Charleston, West Virginia
Attorney for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Michael R. Williams, Esq.
Principal Deputy Solicitor General
Courtney M. Plante
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs and may write separately.

**SYLLABUS BY THE COURT**

1.      "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

2.      "In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." Syllabus point 2, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

3.    "'Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.' Syllabus Point 1, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980), *overruled in part on other grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991)." Syllabus point 20, *State v. Ladd*, 210 W. Va. 413, 557 S.E.2d 820 (2001).

4.    "The essential predicates of a plain view warrantless seizure are (1) that the officer did not violate the Fourth Amendment in arriving at the place from which the incriminating evidence could be viewed; (2) that the item was in plain view and its incriminating character was also immediately apparent; and (3) that not only was the officer lawfully located in a place from which the object could be plainly seen, but the officer also had a lawful right of access to the object itself." Syllabus point 3, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991).

5.    "Neither a showing of exigent circumstances nor probable cause is required to justify a protective sweep for weapons as long as a two-part test is satisfied: An officer must show there are specific articulable facts indicating danger and this suspicion

of danger to the officer or others must be reasonable. If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons." Syllabus point 6, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

**BUNN, Justice:**

The Circuit Court of Raleigh County sentenced Petitioner Charles Eric Ward to a term of imprisonment of five years following his conditional guilty plea for one count of felony possession of a firearm by a prohibited person, in violation of West Virginia Code § 61-7-7(a)(1).[1] Pursuant to the terms of the conditional plea, Mr. Ward appeals the circuit court's denial of his motion to suppress evidence of a firearm seized by law enforcement at his t-shirt print shop in the basement of his mother's residence. He argues that the search and seizure violated his rights under the Fourth Amendment to the United States Constitution and article III, section 6 of the West Virginia Constitution. Specifically, Mr. Ward contends that law enforcement conducted the search and seized the firearm without a warrant and that the plain view and officer safety exceptions relied upon by the State below do not apply. We agree, and accordingly, we reverse the circuit court's December 2, 2021 order denying Mr. Ward's motion to suppress and remand the case for further proceedings pursuant to Rule 11 of the West Virginia Rules of Criminal Procedure.

---

[1] The circuit court suspended this sentence and placed Mr. Ward on twelve months of probation. At oral argument, counsel indicated that Mr. Ward has discharged his sentence; however, we still find it necessary to decide this appeal on the merits. *C.f. State v. Finley*, No. 22-0023, 2023 WL 6804936, * 7 n.13, ___ W. Va. ___, ___ n.13, ___ S.E.2d ___, ___ n.13 (2023) ("To the extent that the State argues that Mr. Finley's appeal is moot because he has discharged his sentence, we disagree. Without addressing the conditional plea agreement, we may presume that 'a wrongful conviction has continuing collateral consequences.' *Spencer v. Kemna*, 523 U.S. 1, 8, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43 (1998).").

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

A Raleigh County Grand Jury indicted Mr. Ward in September 2021, on one count of felony possession of a firearm by a prohibited person in violation of West Virginia Code § 61-7-7(a)(1).[2] In November 2021, Mr. Ward filed a motion to suppress evidence asserting that the warrantless seizure of a firearm from his t-shirt print shop violated the Fourth Amendment to the United States Constitution and article III, section 6 of the West Virginia Constitution. The State did not file a written response.

The circuit court held a suppression hearing on December 1, 2021.[3] During the hearing, Mr. Ward testified to the following facts. In March 2021, two officers from the Raleigh County Sheriff's Office arrived at his mother's residence and questioned him regarding a dispute.[4] The officers asked him for identification, and Mr. Ward informed the

---

[2] In relevant part, West Virginia Code § 61-7-7(a)(1) provides that "[e]xcept as provided in this section, no person shall possess a firearm, as such is defined in section two [§ 61-7-2] of this article, who: (1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[.]" In 2017, Mr. Ward pled guilty to one count of felony possession with the intent to deliver a Schedule I narcotic and one count of felony delivery of Schedule I narcotic.

[3] During the suppression hearing, Mr. Ward's counsel showed Mr. Ward photographs taken of the area at issue. While Mr. Ward testified regarding these photographs, counsel did not move for their admission. Accordingly, those photographs are not included in the appendix record before this Court.

[4] It appears that the Sheriff's Office received a telephone call concerning a dispute between neighbors. Det. Roger Queen indicated that he was not certain but believed Mr. Ward's mother's neighbor summoned law enforcement and that the information was contained in a report. No such report was included in the appendix record. Det. Queen also

2

officers he could retrieve it from "downstairs in [his] mother's house in the [t]-shirt shop."[5] Both officers and Mr. Ward "walked around the side to get to the door." As Mr. Ward entered the main basement, he opened the door "and both of [the officers'] hands, one above the other, grabbed the door behind [him.]" The officers followed him in. Mr. Ward then walked through a second door that led into a separate room used for his t-shirt printing shop. While Mr. Ward retrieved his identification, an officer observed a firearm in the shop.

Mr. Ward testified that a person standing at the entryway to the basement door would not have been able to see the firearm because it would have been obscured by two doors and a shower curtain. Further, he stated that the basement was not his residence; it only contained his t-shirt print shop where he worked once or twice a week, and there was a lock on the front door.

Detective Roger Queen of the Raleigh County Sheriff's Office testified for the State to the following. He and another officer, Deputy Howard, responded to a report of a dispute between neighbors. By the time Det. Queen arrived at the scene, Dep. Howard had already spoken with the neighbor. The officers next spoke with Mr. Ward and his

_____

testified that he was unaware that the neighbor purportedly told other law enforcement officers that if Mr. Ward continued making threats, the neighbor would shoot Mr. Ward. To Det. Queen's knowledge, no one alleged that Mr. Ward had a firearm.

[5] The t-shirt print shop was in the basement of his mother's residence and was only accessible through a separate entrance. This was a room where Mr. Ward made "tie-dyed [t]-shirts, coffee mugs," and other items.

mother. During that conversation, Det. Queen asked for identification, and Mr. Ward informed the officers it was in his t-shirt print shop. Det. Queen followed Mr. Ward through the basement entrance door and stood inside the interior door to the print shop. Until this point, Det. Queen had not asked permission to enter because he was there to watch Mr. Ward retrieve his identification and "[f]or officer safety." Det. Queen indicated he acted with general caution, but that he did not have a specific reason to fear for his safety.[6] Mr. Ward was compliant and did not appear to be impaired, but he did seem "agitated."

Once in the doorway to the t-shirt print shop, Det. Queen "noticed a weapon" in the corner of the room. He then asked Mr. Ward "Do you mind if I come in?" Mr. Ward responded that Det. Queen could enter the room. Det. Queen retrieved the firearm, explaining to the circuit court that he wanted to put himself "in-between [Mr. Ward] and the weapon in case there was an altercation or in case he changed his mind or whatever." Upon retrieving the firearm, Det. Queen generally stated to Mr. Ward that he was not allowed to have the firearm believing that he would get one of two responses from Mr.

_____

[6] When asked why he felt his safety was at risk, Det. Queen responded:

> We don't know who we're dealing with on the road. Once we show up at a place, it could be a cordial conversation or it could turn ugly, so you're always on guard every time you get out of the vehicle. And when you're talking to people, you want to keep them in front of you. You want to keep their hands available, because you don't know what's going to happen next.

Ward: (1) yes, I am (if he was not a felon) or (2) that is not mine (if he was a felon).[7] After some conversation, Mr. Ward admitted that he was a felon. Det. Queen seized the firearm. The State did not put forth any additional evidence.

The day following the hearing, December 2, 2021, the circuit court entered its order denying Mr. Ward's motion to suppress. The court circuit court relied on Det. Queen's testimony that he did not enter the basement building to conduct a search; rather, he entered for a "legitimate purpose to preserve officer safety" because he was responding to a dispute involving Mr. Ward, "who was still in an agitated state due to the circumstances." It concluded that "[t]he discovery of the weapon was within the scope of the plain view doctrine" because "Det[.] Queen had a legitimate reason to be in the doorway of the room so that he could observe the movements of [Mr. Ward] for the purpose of officer and community safety." Further, the circuit court found that "[w]hile in that location [Det. Queen] observed the object which resembled a firearm, asked permission to enter, and upon entry confirmed that it was a firearm."

With the approval of the State and the circuit court, Mr. Ward entered a conditional guilty plea in January 2022 pursuant to Rule 11(a)(2) of the West Virginia

---

[7] The record on appeal does not indicate that Det. Queen had any independent prior knowledge of Mr. Ward or his criminal history.

5

Rules of Criminal Procedure,[8] preserving the right to appeal the denial of his motion to suppress. On February 17, 2022, the circuit court sentenced Mr. Ward to a five-year term of imprisonment and then suspended the sentence, ordering twelve months of probation. This appeal followed, challenging the circuit court's denial of Mr. Ward's motion to suppress.

## II.

## STANDARD OF REVIEW

The issue on appeal is whether the circuit court erred in denying Mr. Ward's motion to suppress. We have previously set forth that standard of review in Syllabus points 1 and 2 of *State v. Lacy*:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the

---

[8] We have found that "[w]hen a defendant unconditionally and voluntarily pleads guilty to an offense, the defendant generally waives nonjurisdictional objections to a circuit court's rulings, and therefore cannot appeal those questions to a higher court." *State v. Legg*, 207 W. Va. 686, 690 n.7, 536 S.E.2d 110, 114 n.7 (2000). However, "a 'conditional' plea under Rule 11(a)(2) of the *West Virginia Rules of Criminal Procedure* allows the defendant to plead guilty, but preserve questions for appeal. If the defendant prevails on appeal, . . . the defendant may withdraw the guilty plea and proceed to trial." *Id. See also* W. Va. R. Crim. P. 11(a)(2) ("With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.").

witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

196 W. Va. 104, 468 S.E.2d 719 (1996).

## III.

## DISCUSSION

In this appeal, Mr. Ward raises one assignment of error. He argues that the circuit court erred in denying his motion to suppress evidence of a firearm seized by law enforcement because the search and seizure of the firearm was in violation of his rights under the Fourth Amendment to the United States Constitution and article III, section 6 of the West Virginia Constitution. Mr. Ward asserts that law enforcement officers conducted a search and seized evidence without a warrant, and that the plain view and officer safety exceptions to the warrant requirement relied upon by the State are inapplicable under the circumstances here. We agree.

7

### *A. Fourth Amendment "Standing"*

"This Court has long recognized that Article III, § 6 of our state constitution[9] and the Fourth Amendment of our federal constitution,[10] protect citizens from unreasonable searches and seizures." *State v. Poling*, 207 W. Va. 299, 303, 531 S.E.2d 678, 682 (2000) (quotations, citation, and footnotes omitted; footnotes added). Moreover, we have acknowledged that, "[t]his [Fourth Amendment] federal right to be free from unreasonable search and seizure applies to the states through the Fourteenth Amendment." *State v. Pennington*, ___ W. Va. ___, ___ n.6, 885 S.E.2d 569, 574 n.6 (2022) (citing *Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 1374, 63 L. Ed. 2d 639 (1980). *See also State v. Duvernoy*, 156 W. Va. 578, 582, 195 S.E.2d 631, 634 (1973) ("Article III, Section 6 of the West Virginia Constitution is very similar to the Fourth Amendment" and has been traditionally construed in harmony with the Fourth Amendment).

A Fourth Amendment inquiry generally consists of two components: (1) whether the defendant asserting the right has a reasonable expectation of privacy in the place searched and (2) whether the search was reasonable. *See, e.g.*, *U.S. v. Rodriguez*, 33 F.4th 807, 811 (5th Cir. 2022) ("A Fourth Amendment inquiry typically proceeds in two parts: A court first asks whether the defendant had standing to challenge the search and then, if the answer is yes, asks whether the search was reasonable.").

---

[9] Article III, section 6 of the West Virginia Constitution provides:

8

As an initial matter, we consider the first component—whether the defendant asserting the right has a reasonable expectation of privacy in the placed searched—commonly considered Fourth Amendment standing. On appeal, neither party raises the issue of Fourth Amendment standing. However, this Court has previously treated Fourth Amendment standing akin to jurisdictional standing. For example, in *State v. Worley*, we found that although standing was not raised by either party, the defendant's standing to challenge the search was "necessary to a resolution of the Fourth Amendment issues . . . ." 179 W. Va. 403, 408 n.3, 369 S.E.2d 706, 711 n.3 (1988). Additionally, in *State v. Tilley*, we determined that before we could consider the merits of whether the challenged search was reasonable, we had to first "address a jurisdictional concern." No. 17-0155, 2018 WL 3005946, at *3 (W. Va. June 15, 2018) (memorandum decision). This Court noted that while the State had not raised the issue of standing before the circuit court, "[t]his [wa]s inconsequential" because "[s]tanding is a jurisdictional requirement that cannot be waived,

---

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

[10] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

9

and may be brought up at any time in a proceeding." *Id.*, at *3 n.2 (quotations and citations omitted). As this precedent demonstrates, we have previously considered Fourth Amendment standing as a threshold jurisdictional issue and non-waivable.

However, in 2018, the United States Supreme Court clarified Fourth Amendment standing and distinguished it from jurisdictional standing. The Supreme Court noted that while most courts have described the issue of whether an individual has an expectation of privacy in the place searched as "Fourth Amendment 'standing,'" this idea, rather, "is not distinct from the merits and is more properly subsumed under substantive Fourth Amendment doctrine." *Byrd v. United States*, ___ U.S. ___, ___,138 S. Ct. 1518, 1530, 200 L. Ed. 2d 805 (2018) (quotations and citation omitted). It further explained that while Fourth Amendment standing "can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search[,]" this standing is different from Article III standing. *Id.* Article III standing "is jurisdictional and must be assessed before reaching the merits." *Id. See also Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129, 131 S. Ct. 1436, 1440, 179 L. Ed. 2d 523 (2011) ("To obtain a determination on the merits in federal court, parties seeking relief must show that they have standing under Article III of the Constitution."). Significantly, the Supreme Court concluded that "[b]ecause Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." *Byrd*, 138 S. Ct. at 1530. The Supreme

10

Court's decision made clear that Fourth Amendment standing is a part of the substantive analysis and not a jurisdictional threshold.

Following the Supreme Court's clarification in *Byrd*, courts have consistently found that this type of standing does not constitute a jurisdictional bar to consideration of substantive Fourth Amendment issues. *See, e.g.*, *Warick v. Commonwealth*, 592 S.W.3d 276, 282 (Ky. 2019) ("*Byrd* [] recognized [] why the Fourth Amendment 'standing' terminology remains in use, cautioned against its confusion with the U.S. Constitution's Article III standing, and provided explicit guidance in addressing a motion to suppress.").[11] Succinctly stated, rather than being a jurisdictional bar, "the standing inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." *United States v. Cole*,

---

[11] *See also United States v. Ross*, 963 F.3d 1056, 1063 (11th Cir. 2020) (noting that "the Supreme Court has clearly and consistently distinguished between Fourth Amendment 'standing' (scare quotes intended) and Article III standing" and determining that a previous Eleventh Circuit opinion, *United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015), "inadvertently 'confused' so-called Fourth Amendment 'standing' and true-blue Article III standing in exactly the way that the Supreme Court has forbidden"); *United States v. Garay*, 938 F.3d 1108, 1111 (9th Cir. 2019) ("The Supreme Court recently clarified in *Byrd* that Fourth Amendment standing, unlike Article III standing in the civil context, is 'not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.'" (citation omitted)); *United States v. Moss*, 936 F.3d 52, 57 n.8 (1st Cir. 2019) ("As the Supreme Court recently explained, whether a defendant has a reasonable expectation of privacy 'is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.' *Byrd v. United States*, [___] U.S. [___, ___], 138 S. Ct. 1518, 1530, 200 L. Ed. 2d 805 (2018).").

11

425 F. Supp. 3d 468, 483 (W.D. Pa. 2019) (quotations and citation omitted). Consequently, we now make clear that Fourth Amendment standing—whether the individual asserting the Fourth Amendment right has a reasonable expectation of privacy in the placed searched—is not jurisdictional; and instead, it is one component of a Fourth Amendment claim.

Because we have found that Fourth Amendment standing is not jurisdictional, the issue may be forfeited or waived. *See, e.g.*, *United States v. Jenkins*, 743 F. App'x 636, 644 n.4 (6th Cir. 2018) ("The government did not raise the issue of [the defendant's] standing to contest the residence searches in the district court and has not raised it on appeal; we therefore do not address it here.").[12] Turning to the facts of this case, on appeal and in the proceedings below,[13] the State failed to raise the issue of whether the

---

[12] *See also United States v. Crutchfield*, No. 22-CR-0269, 2023 WL 3317992, at *1 n.2 (D. Minn. May 9, 2023) ("The Court acknowledges . . . that 'the question of whether . . . a reasonable expectation of privacy exists has often loosely—and misleadingly—been referred to as a question of Fourth Amendment "standing."' *United States v. Foster*, 763 F. Supp. 2d 1086, 1087 (D. Minn. 2011). The question does not, however, relate to 'standing' in the Article III sense, but rather to the merits of the Fourth Amendment challenge. Thus, the government can waive or forfeit the argument that the defendant lacks 'standing,' and the Court has no obligation to conduct its own inquiry into whether the defendant has 'standing.' *See id.* at 1090.").

[13] Mr. Ward asserts on appeal that the State conceded below that he had a reasonable expectation of privacy. At the suppression hearing, Mr. Ward argued that he "had a reasonable expectation of privacy in [the] building. He had a key to it, he had his business-wares in there. The Fourth Amendment applies. He had a reasonable expectation of privacy there." The State responded that "[f]irst and foremost, it was not his residence. It was a business. The Fourth Amendment is very prohibitive but it's not inflexible. The defense would have a better argument if this was his house, although the State doesn't believe that that's enough to carry the day either." Mr. Ward then replied that "the State conceded the distinction between the business and the home, while there is a distinction there, the protections of the Fourth Amendment are at their highest for the home is certainly

12

Mr. Ward satisfied his burden to show that he had a reasonable expectation of privacy in the basement of his mother's residence which housed his t-shirt print shop.[14] As such, this issue has been waived, and we need not decide whether Mr. Ward had a reasonable expectation of privacy in the place searched by Det. Queen.[15]

## B. The Reasonableness of the Search

Turning to the second element of a Fourth Amendment claim, we must determine whether the search itself was reasonable. This Court has consistently held that

> "'[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.' Syllabus Point 1, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d

---

applied to one's business and I believe that the State concedes it would apply there." The State did not argue any further on the issue. Accordingly, the State arguably conceded that Mr. Ward had an expectation of privacy in the basement but only that it was a lesser expectation because it was a business.

[14] Mr. Ward had the initial burden of demonstrating that he had a reasonable expectation of privacy in the place searched. *See State v. Payne*, 239 W. Va. 247, 259, 800 S.E.2d 833, 845 (2016) ("[W]e find the petitioner failed in his burden of proving that he had a reasonable expectation of privacy in his jacket and, thus, lacks standing to challenge the search.").

[15] *See, e.g.*, *United States v. Russell*, 26 F.4th 371, 374-75 (6th Cir.), *cert. denied*, 143 S. Ct. 385, 214 L. Ed. 2d 188 (2022). ("[T]o waive the argument, the government must either (1) take some step to expressly abandon it or (2) fail to raise it in its first brief on appeal." (quotations and citations omitted)).

804 (1980), *overruled in part on other grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991)."

Syl. pt. 20, *State v. Ladd*, 210 W. Va. 413, 557 S.E.2d 820 (2001). Here, the parties do not dispute that the officers' conduct was a warrantless search and seizure. Accordingly, we must consider whether the search fell within a recognized exception.[16]

Both in the proceedings below and on appeal, the State contends that the plain view exception applies to the facts of this case.[17] We have held that

> [t]he essential predicates of a plain view warrantless seizure are (1) that the officer did not violate the Fourth Amendment in arriving at the place from which the incriminating evidence could be viewed; (2) that the item was in plain view and its incriminating character was also immediately apparent; and (3) that not only was the officer lawfully located in a place from which the object could be plainly seen, but the officer also had a lawful right of access to the object itself.

---

[16] "When the State seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *State v. Lacy*, 196 W. Va. 104, 111, 468 S.E.2d 719, 726 (1996) (citing generally *Mincey v. Arizona*, 437 U.S. 385, 391, 98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290, 299 (1978)). This Court further explained that "simply articulating a safety reason is insufficient; the burden of proof is with the party asserting the exception to establish that the exception is legitimate and not pretextual." *Lacy*, 196 W. Va. at 111, 468 S.E.2d at 726.

[17] *See State v. Farley*, 230 W. Va. 193, 197, 737 S.E.2d 90, 94 (2012) (per curiam) ("Examples of recognized exceptions to the general warrant requirement include certain brief investigatory stops, searches incident to a valid arrest, seizures of items in plain view, searches and seizures justified by exigent circumstances, consensual searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable.").

14

Syl. pt. 3, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991). To establish the plain view exception, all three prongs must be satisfied. *See State v. McDonald*, No. 21-0796, 2023 WL 2945044, ___ W. Va. ___, ___, ___ S.E.2d. ___, ___ (2023) ("The use of the word 'and' in a list indicates the conjunctive, meaning that all listed conditions must be satisfied."). *See also State v. Lopez*, 197 W. Va. 556, 563, 476 S.E.2d 227, 234 (1996) (finding that because the State failed to satisfy the second prong of the *Julius* inquiry, this Court could not "conclude that [the item] was properly seized as the result of a plain view warrantless seizure."). On appeal, Mr. Ward asserts that the only question for this Court is, under the first prong of the plain view exception, whether Det. Queen was legally justified in entering the premises up to the place where he saw the firearm. Accordingly, we limit our review to that inquiry.

Pursuant to the first prong of the plain view exception to the warrant requirement, this Court must determine whether the officers, including Det. Queen, violated Mr. Ward's Fourth Amendment rights when the officers arrived at the interior door in the basement (the door to Mr. Ward's t-shirt print shop) where Det. Queen could view the firearm. *See* Syl. pt. 3, in part, *Julius*, 185 W. Va. 422, 408 S.E.2d 1. The State argued below and asserts on appeal that Det. Queen had legitimate officer safety concerns that allowed him to lawfully enter the first door of the basement, then through the first room, and then inside the threshold of the interior door at the threshold of the t-shirt print shop. At the suppression hearing below, Det. Queen specifically testified that the only

15

reason he followed Mr. Ward to just inside the doorway to the second room was for officer safety.

This Court has recognized that a warrantless search may be justified when "'officers reasonably fear for their safety . . . .'" *Lacy*, 196 W. Va. at 113, 468 S.E.2d at 728 (quoting *United States v. Mendoza–Burciaga*, 981 F.2d 192, 196 (5th Cir.1992)). We have recognized one such exception when law enforcement conducts a protective sweep[18] of an area for officer safety concerns when certain criteria are satisfied.[19] *See* Syl. pt. 5,

---

[18] This Court has defined a protective sweep as "a quick and limited search of premises for weapons once an officer has individualized suspicion that a dangerous weapon is present and poses a threat to the well-being of himself and others." Syl. pt. 8, in part, *Lacy*, 196 W. Va. 104, 468 S.E.2d 719. This sweep is a "cursory visual inspection" that "is limited to the area where the suspected weapon could be contained and must end once the weapon is found and secured." *Id.* We adopted this definition from the United States Supreme Court as stated in *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed. 2d 276. *See Lacy*, 196 W. Va. at 115, 468 S.E.2d at 730.

[19] We have noted that,

[o]fficers should be permitted to search for a suspected weapon and secure it if the officers have a *reasonable* belief that failure to secure the weapon will endanger themselves or private citizens. Although there is ""no ready test for determining reasonableness other than by balancing the need to search [or seize] . . ."" [and such searches involve a] 'severe, though brief, intrusion upon cherished personal security,'" this Court finds limited searches are reasonable when weighed against the interest in "'crime prevention and detection,' . . . and the 'need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause'" for a search even though something has raised the officers' suspicions of danger. *Michigan v. Long*, 463 U.S. [1032,] 1046-47, 103 S. Ct. [3469,] 3479, 77 L.Ed.2d [1201]. (Citations and footnote omitted). Moreover, it would

*Lacy*, 196 W. Va. 104, 468 S.E.2d 719 ("[l]aw enforcement officials may interfere with an individual's Fourth Amendment interests with less than probable cause and without a warrant if the intrusion is only minimal and is justified for law enforcement purposes. To determine whether the intrusion complained of was minimal, a circuit court must examine separately the interests implicated when the police feel a search for weapons is necessary to keep the premises safe during the search and the privacy interests of the defendant to be free of an unreasonable search and seizure of his or her residence. Only when law enforcement officers face a circumstance, such as a need to protect the safety of those on the premises, and a reasonable belief that links the sought after information with the perceived danger is it constitutional to conduct a limited search of private premises without a warrant."). This Court has explained that

> [n]either a showing of exigent circumstances nor probable cause is required to justify a protective sweep for weapons as long as a two-part test is satisfied: An officer must show there are specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable. If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons.

> "'be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" *Michigan v. Long*, 463 U.S. at 1047, 103 S. Ct. at 3479, 77 L. Ed. 2d at 1218. (Citations and footnote omitted).

*Lacy*, 196 W. Va. at 114 n.14, 468 S.E.2d at 729 n.14.

17

Syl. pt. 6, *Lacy*, 196 W. Va. 104, 468 S.E.2d 719.

Here, the parties do not dispute the underlying facts surrounding the search and seizure. While Det. Queen testified that he entered the premises for officer safety because he was "there for a [neighbor] disturbance[,]" he testified that he perceived no specific or particular threat to his safety. In fact, Det. Queen testified only to a general concern that officers "don't know what's going to happen next[,]" which led him to follow Mr. Ward inside the premises.[20] He had limited information about the neighbors' dispute, and was unaware of the exact reason law enforcement was called to the scene. Det. Queen believed that the neighbor, not Mr. Ward, had called for assistance, but he was unaware of what the neighbor had said to the other officer or whether Mr. Ward had made any specific threats. He stated that Mr. Ward was compliant and did not appear to be impaired during their encounter. There was no testimony or evidence presented that Det. Queen had a particular suspicion that a firearm was present, or that a firearm posed a threat to himself or the other officer present. *See State v. Bookheimer*, 221 W. Va. 720, 728, 656 S.E.2d 471, 479 (2007) (per curiam) (finding that a protective sweep was not justified when "the officers had no individualized suspicion that a firearm was present, or that a firearm posed a threat to the well-being of anyone present").

---

[20] See note 6, *supra*.

The circuit court relied on testimony that Mr. Ward was "agitated" by his encounter with the neighbor to justify the officer safety exception. In *Bookheimer*, this Court found that the defendant's agitation did not justify officers' entry into her home. 221 W. Va. at 727, 656 S.E.2d at 478. Specifically, we concluded that

> [b]eing less than "irate" and "agitated" does not lend support to the officer's contention that [the defendant] was hysterical. An objective review of the record reveals a woman who was angry and who was, indeed, probably yelling. However, her anger and yelling were not caused by circumstances occurring prior to the arrival of the officers. Rather, her agitation was aimed at the fact that the officers were present on her property. Thus, [the defendant's] behavior did not create an emergency or an exigent circumstance justifying entry into the residence.

*Id.* Det. Queen made only a general allegation that Mr. Ward was agitated without elaborating on any particular or specific behavior. He provided no testimony that Mr. Ward was yelling, threatening, or acting erratically. In fact, Det. Queen stated that Mr. Ward was compliant with law enforcement. We do not find this general "agitation" to be a specific and particularized fact supporting a warrantless search and seizure for the purpose of officer safety. Consequently, we find that the officer safety exception does not apply.[21]

---

[21] Aside from protective sweeps, the officer safety exception can also be included in the related exigent circumstances exception. *See People v. Brunsting*, 307 P.3d 1073, 1081(Co. 2013) (adopting the Tenth Circuit Court of Appeals approach and concluding that "officer safety concerns fall within the exigent circumstances exception when (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable"). Similarly, this Court has stated that exigent circumstances may exist "when police reasonably believe [] their safety or the safety of others may be threatened . . . ." *State v. Kendall*, 219 W. Va. 686, 692, 639 S.E.2d 778, 784 (2006) (per curiam) (quotations and citation omitted). We have explained that the existence of this reasonable belief "should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they

19

Because this exception does not apply,[22] the State is unable to satisfy the first prong of the

plain view analysis, and the circuit court erred in denying Mr. Ward's motion to suppress.

---

had, at the time, a reasonable belief that there was a need to act without a warrant." Syl. pt. 7, in part, *Lacy*, 196 W. Va. 104, 468 S.E.2d 719. As explained herein, the circumstances of this case do not demonstrate that Det. Queen had a reasonable belief that there were concerns for his safety or the safety of his fellow officer that required him to follow Mr. Ward into the basement.

[22] On appeal, the State attempts to argue another exception could apply as well: implied consent. There was no argument to the circuit court below that Det. Queen reached the second door through implied consent. Further, the circuit court did not rely upon implied consent in its order. Our general rule is that, "absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal." *State v. Miller*, 197 W. Va. 588, 597, 476 S.E.2d 535, 544 (1996). Furthermore, we find the State has inadequately briefed this issue. Other than cursorily citing to *State v. Flippo*, 212 W. Va. 560, 575 S.E.2d 170 (2002), the State did not meaningfully analyze this issue. We have cautioned that "a skeletal argument, really nothing more than an assertion, does not preserve a claim." *State v. Fleming*, 237 W. Va. 44, 58, 784 S.E.2d 743, 757 (2016) (quotations and citation omitted). At oral argument, for the first time, the State contended that there were several cases that support its contention that implied consent applies in this case. However, the State only specifically named one, without providing the citation, and none were included in the brief on appeal. For these reasons, we decline to address this issue.

For similar reasons we decline to address whether Mr. Ward's express consent to enter the second room—his t -shirt print shop—cured the Fourth Amendment violation. On appeal, the majority of the State's argument as to this point consists of the following: "In this case, the officers had lawful access to the firearm because Petitioner consented to the officer following Petitioner into the second room where the firearm was located and the seizure effectuated. Det. Queen testified that he asked to come in and '[Petitioner] said yes.'" (Alteration in original). First, the State put forth this argument in support of prong three of *Julius*, as opposed to prong one. Second, to the extent that the State argued that express consent also applies to prong one, the State cites negligible law and facts in support of this argument. Further, the State cites no law supporting its contention that a Fourth Amendment violation can be cured by later-given consent.

20

## IV.

## CONCLUSION

For the reasons stated above, this Court reverses the circuit court's December 2, 2021 order denying the motion to suppress and remands this matter to the Circuit Court of Raleigh County for further proceedings consistent with this Opinion.

Reversed and Remanded with Directions.